# NO. 12-08-00370-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DARWIN BROWN,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

Darwin Brown appeals his conviction for aggravated robbery. The indictment contained a deadly weapon enhancement, and three enhancement paragraphs alleging prior felony convictions. After a motion to suppress was heard and denied, the case was tried to a jury, which convicted Appellant, found the enhancement allegations to be true, and sentenced him to imprisonment for forty-five years. On appeal, Appellant, pro se, raises seven issues: legal and factual insufficiency of the evidence, lack of probable cause for his warrantless arrest, ineffective assistance of counsel, improper seizure of his inmate mail without a warrant, erroneous admission of hearsay testimony, and trial court bias against him. We affirm.

### BACKGROUND

On October 12, 2007, between 10:30 and 11:00 a.m., Arester Joe "A.J." Smallwood robbed the Homer Mini-Mart on Highway 69 in Huntington, which is in Angelina County, Texas. During the course of the robbery, Smallwood hit the store clerk in the face with his fist and pistol, and fled with approximately one thousand dollars. Smallwood was apprehended in the woods near the Mini-Mart about two hours later, after an extended search by police. Smallwood was identified by the store's owner as the robber. During questioning by the police, Smallwood took

the police to where he had concealed the money and pistol. He also identified Appellant, his boxing coach, as his accomplice, saying Appellant had planned the robbery because he needed money to keep his boxing program open. Smallwood said that Appellant had driven him to the Mini-Mart in a light blue Taurus and given him the pistol he used in the robbery. He told the police the handgun had been wrapped in a blue towel. Smallwood testified that he ran behind the store after the robbery because that is where Appellant was supposed to pick him up for his escape. Smallwood also explained that, before the day of the robbery, Appellant had taken him to the Mini-Mart to "scope it out." Appellant had sent Smallwood inside because the owner of the Mini-Mart knew Appellant.

About four days after his arrest, another inmate handed Smallwood an unsigned, handwritten note. The note's author said that people were trying to get Smallwood to "get a conviction against me." The note's author explained that he had told a lawyer that some other people had been trying to get Smallwood to "do some robberies" with them, they had threatened to harm Smallwood's family if he named them, and Smallwood "put my name in it" because Smallwood did not want his family to get hurt. The note instructed Smallwood to rewrite the statement and send it back to the author, who would send it to the lawyer. The note promised "we both will be out of here before Thanksgiving." The note then encouraged Smallwood to "do the right thing [a]nd get this back to me" by giving it back to the inmate who had delivered it to Smallwood. Smallwood testified that he thought Appellant had sent him the note and he thought he would get out of jail if he changed his statement. As instructed, Smallwood rewrote the statement the way Appellant told him to write it, and sent it to Appellant. Smallwood also sent letters to his grandmother and Appellant's lawyer recanting his statement to the police that Appellant had been involved in the robbery.

Smallwood's sister testified that Appellant had called her brother at her Lufkin apartment the morning of the robbery and picked him up there at about 10:00 that morning. She and one of Smallwood's cousins testified that Smallwood had told them Appellant wanted him to commit a robbery, and, because of that, Smallwood had been trying to avoid Appellant. Additionally, Smallwood's aunt testified that he had told her Appellant wanted him to do something that was "wrong" and that he did not want to do.

Thomas E. Thomas, the owner of the Mini-Mart, testified that he knew Appellant because

he was a frequent customer in the Mini-Mart. Thomas said Appellant came into the store ten or fifteen minutes after the robbery wearing a "plastic wrapper" on his boot. Deputy David Rodriguez testified that he was almost struck by a departing blue Taurus as he neared the Mini-Mart in response to the robbery call. Deputy David Wells testified that he saw Appellant in the blue Taurus near the Mini-Mart when he was returning to his office after Smallwood's arrest, about two hours after the robbery. Later that day, after Smallwood had told the investigators of Appellant's involvement, Deputy Wells and Smallwood saw Appellant at a washateria on Highway 69 north of the Mini-Mart. Deputy Wells kept Appellant under surveillance until Deputy Rodriquez arrived and arrested him.

Deputy Wells also testified about the postarrest inventory of the Taurus. Officers found a blue towel matching Smallwood's description of the towel the gun had been wrapped in and two slips of paper with Smallwood's sister's telephone number written on them. During the course of the investigation, Deputy Wells found a store video from a business located on Highway 69 that showed a clear view of the highway. In the video, a Taurus that could have been driven by Appellant was traveling toward Lufkin at 10:40 a.m. Deputy Wells explained that the Mini-Mart is five and one-half miles from Smallwood's apartment and Appellant would have had enough time to go get Smallwood and get to the Mini-Mart in time to rob it at 10:50. Additionally, Deputy Wells testified that he recovered the Mini-Mart video showing Smallwood inside the store making a purchase several days before the robbery, supporting Smallwood's contention that Appellant had brought him to the Mini-Mart to "case" the store for the robbery.

Lufkin police investigator Otis Almand, who also has training as a handwriting analyst, testified that the note Smallwood received in jail encouraging him to recant his allegation against Appellant had been written by Appellant.

Tony Buchanan, whose stepfather is Appellant's uncle, testified for the defense. He said that Appellant came to his house in Lufkin between 10:15 and 10:30 the morning of the robbery and stayed there for twenty to thirty minutes. Maybe half an hour later, he saw Appellant at the nearby home of Rosalynd Price, Buchanan's cousin, helping her spread lime in her front yard.

Rosalynd Price, Appellant's cousin, testified that she saw Appellant at Buchanan's house at about 10:40 or 10:45. He was getting out of his car as though he had just arrived. She went home and, about thirty minutes later, called Appellant who was then on his way back to his house.

She asked him to come to her house to put out lime to kill fleas, and he returned about 12:00 or 12:20. They put plastic bags on his pants legs to keep the lime off his clothes, and he put out the lime, which took one to one and one-half hours.

Ruth Price, Appellant's aunt, testified that Appellant was at the Homer Mini-Mart sometime during the morning of the robbery and helped her pump gas. Appellant still had the plastic leg coverings on, and he told her he had just come from Rosalynd's house. Kasandra Malone testified that Appellant was her boyfriend, and used her blue Taurus, which had numerous mechanical problems, including problems with the transmission. She also identified a receipt she found in her car's ashtray for a purchase at 11:50 a.m. the morning of the robbery at a Dollar Store in Huntington, for items including transmission fluid.

The jury convicted Appellant as charged and sentenced him to imprisonment for forty-five years.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant asserts that the evidence is legally and factually insufficient to support his conviction. More specifically, he contends that the State's evidence fails to establish that he was a party to the offense. He argues that the circumstantial evidence supports theories of both guilt and innocence and forensic evidence refutes any connection between the gun and the blue towel found in his car.

### Standard of Review

In conducting a legal sufficiency review, the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

When reviewing the factual sufficiency of the evidence to support a conviction, we view the evidence in a neutral light. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009).

4

The evidence, though legally sufficient, is factually insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or when, considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id*. In conducting a factual sufficiency review, we must discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Although we are authorized to second guess the jury to a very limited degree, we must nevertheless give the jury's verdict a great degree of deference. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). The jury alone determines the weight to place on contradictory testimonial evidence because that determination depends on the jury's evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

Any issue in a criminal case may be proven circumstantially. *See Jordan v. State*, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In a circumstantial evidence case, it is unnecessary for every fact to point directly and independently to the defendant's guilt; rather, it is sufficient if the finding of guilt is supported by the cumulative force of all the incriminating evidence. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). Further, the factual sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Grotti*, 273 S.W.3d at 281. This charge accurately promulgates the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. at 280-81.

**Applicable Law**

A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). "Appropriate" means to acquire or otherwise exercise control over property other

5

than real property. *Id***.** § 31.01(4)(B). The Texas Penal Code states that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). Further, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003).

Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself; rather, the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect the accused to the offense. *Id*. It is possible that circumstances that are apparently insignificant may constitute sufficient evidence of corroboration. *Id*. Additionally, proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id*. Evidence of flight or other suspicious behavior can also corroborate accomplice testimony and connect a defendant to a crime. *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997).

**Discussion**

In a review of the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A.J. Smallwood testified that Appellant, who wanted the money to keep his boxing program open, had been urging

6

him to commit the robbery. Smallwood also testified that Appellant had driven him to the Mini-Mart, once to "case" the store in preparation for the robbery, and again on the day of the crime to commit the robbery. Smallwood further testified that Appellant gave him the pistol he used to rob the store, and was to pick him up after the robbery. Smallwood testified that Appellant's pistol had been wrapped in a blue cloth. Smallwood also testified that Appellant had requested, in a note he received while he and Appellant were in jail, that he recant his statement to police that Appellant had been involved in the robbery. In response, Smallwood had written letters recanting his statement of Appellant's involvement.

The evidence before the jury further indicated that Appellant was at the scene of the crime immediately after the robbery. Deputy Rodriguez testified he was almost struck by a blue Taurus while responding to the robbery call. Later, he saw Appellant in the same car at a washateria near the Mini-Mart. Deputy Wells also saw Appellant in the blue Taurus near the Mini-Mart after Smallwood's arrest. During the inventory of Appellant's Taurus, Deputy Wells found a blue towel in the car, as well as two pieces of paper with Smallwood's sister's telephone number written on them. And Deputy Wells recovered security video from the Mini-Mart taken days before the robbery, showing Smallwood in the store. This was consistent with Smallwood's claim that Appellant took him to the store to evaluate the store in anticipation of the robbery. A handwriting analyst testified that the note to Smallwood urging him to recant the allegations against Appellant had been written by Appellant.

Smallwood's sister testified that Appellant picked him up the morning of the robbery. She and one other witness testified that Smallwood had told them that Appellant wanted him to commit the robbery, while a third witness testified that Appellant wanted Smallwood to do something he knew was "wrong." They also testified that Smallwood had been avoiding Appellant because of the pressure to commit the crime.

In applying Article 38.14, we must also consider whether there was sufficient corroborating evidence of Smallwood's statements that Appellant was involved in the robbery, other than Smallwood's statements and the facts of the crime itself. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. As noted, the evidence does not have to establish his guilt beyond a reasonable doubt or directly link him to the crime, but there must be "some" evidence that "tends to connect" him to the crime. *See Malone*, 253 S.W.3d at 257. Such evidence includes Appellant's presence

7

at the scene and his leaving the area of the robbery immediately after the crime, as well as the blue cloth police recovered during the inventory of his car. Further, Appellant picked Smallwood up from his sister's apartment the morning of the robbery. Also, Smallwood's family testified that Smallwood had told them before the robbery that Appellant was trying to get him to commit the robbery. And the note asking Smallwood to recant his allegations against Appellant was established by the handwriting expert to have been written by Appellant. Those facts constitute "some evidence" that is sufficient corroboration tending to connect Appellant to the robbery. *Id*. The evidence being legally sufficient, we overrule Appellant's first issue.

In his second issue, Appellant contends the evidence is factually insufficient to support his conviction. We consider all of the evidence in a neutral light. *See Steadman*, 280 S.W.3d at 246. In addition to the evidence in support of the verdict, the evidence also shows that technicians working for police investigators were unable to detect either Appellant's DNA or his fingerprints on the gun, and the blue towel police found in Appellant's car was not the source of the blue threads found on the gun. Also, Buchanan testified that Appellant was at his house the morning of the robbery, and then went to Rosalynd Price's house. Rosalynd Price also testified that Appellant came to her house to help her put lime in her yard, and they tied plastic around his pants legs to keep the lime off his clothes. Ruth Price testified she later saw Appellant at the Mini-Mart and he still had the plastic on his legs. Kasandra Malone testified Appellant used her car, which had transmission problems. She offered a receipt she found in the ashtray after she recovered the car from the police that indicated someone had purchased transmission fluid at the Dollar Store in Huntington at 11:50 a.m. on the morning of the robbery.

The technicians explained that any fingerprints and DNA could have been removed while the gun was in the waistband of Smallwood's pants. The jury could have determined that the fact that the blue towel found in the car was not the source of threads found on the gun did not necessarily mean that Smallwood lied about the gun having been wrapped in a blue towel in Appellant's vehicle. Defense witnesses said Appellant was with Buchanan at the time of the robbery and spreading lime just after noon. This conflicts with Smallwood's testimony and that of the officers who saw Appellant just after the morning robbery. Additionally, Thomas testified that Appellant was in the Mini-Mart just ten or fifteen minutes after the robbery, with plastic on his boot. Further, defense witnesses conflicted with each other. Rosalynd and Buchanan said

8

Appellant was spreading lime after noon, while Ruth said she saw him at the Mini-Mart in the morning with plastic on his legs. It is the jury's role to weigh such conflicting evidence, and determine the facts of the case. *See Cain*, 958 S.W.2d at 408-09. The evidence that Appellant adduced is not so strong as to put the jury's verdict in question. *See Berry*, 233 S.W.3d at 854. The jury's verdict is not manifestly unjust, does not shock the conscience, and does not clearly demonstrate bias. *See id*. Thus, the evidence is factually sufficient to support the judgment. We overrule Appellant's second issue.

## WARRANTLESS ARREST

In his third issue, Appellant contends that his constitutional rights under the Fourth[1] and Fourteenth[2] Amendments were violated by his warrantless arrest, which he asserts was made without probable cause and in the absence of exigent circumstances. Further, Appellant alleges his initial arrest violated Article 14 of the Texas Code of Criminal Procedure. He asserts that Smallwood was not a credible witness and Smallwood's testimony was not corroborated by other evidence to support the arrest. Finally, Appellant argues that the evidence seized when he was unlawfully arrested cannot be used against him.

**Standard of Review**

We review the trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We reverse the judgment only if it is outside the zone of reasonable disagreement. *Id*. We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. An appellate review of a trial court's decision to overrule a motion to suppress requires the reviewing court to recognize the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

[2] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

Crim. App. 2000). We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the trial court's application of the law to the facts. *Dixon*, 206 S.W.3d at 590.

## Applicable Law

As a general rule, police officers must obtain an arrest warrant before taking someone into custody. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). There are exceptions to this rule. Article 14.03(a)(1) of the Texas Code of Criminal Procedure provides that any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances that reasonably show such persons have been guilty of some felony. TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp. 2009); *Gallups v. State,* 151 S.W.3d 196, 201-02 (Tex. Crim. App. 2004). Article 14.04 states that "[w]here it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused." TEX. CODE CRIM. PROC. ANN. art. 14.04 (Vernon 2005). What must be shown by "satisfactory proof" is the legal equivalent of constitutional "probable cause." *Hughes*, 24 S.W.3d at 838. The necessary inquiry is "not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest," and if there was probable cause, whether "the arrest, though without a warrant, was lawful." *United States v. Watson*, 423 U.S. 411, 417, 96 S. Ct. 820, 824-25, 46 L. Ed. 2d 598 (1976).

Probable cause for a warrantless arrest exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). The determination of the existence of probable cause concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Id*. Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Id*.

## Discussion

After the suppression hearing, the trial court explained that the officers had some

indication of the reliability of Smallwood's information because the car matching the description he gave had been encountered in the area of the robbery three different times and the money and gun were where he said they would be. The court found that there were suspicious circumstances warranting further investigation and detention to determine if the Taurus and Appellant were connected to the robbery, meeting the exception to the warrant requirement.

Appellant argues that the person who identified him, Smallwood, was his co-defendant, and since Smallwood had just been arrested for the robbery, Smallwood, as a criminal, was an unreliable witness. Therefore, the argument continues, the State did not meet the requirement of Article 14.04 that the police obtain information from a "credible person." Appellant asks this court, in effect, to establish a new rule, that a criminal's statement to police can never be the basis for arresting another criminal. Clearly, the effect of such a broad rule would eviscerate any reason for the police to interrogate a defendant regarding co-defendants, if, after acquiring the information, it lacks any credibility because it came from a confessed criminal. This is not the case. Rather, a confessing criminal's statements, including those implicating others, are weighed by the officers in light of the other evidence available. *See Self v. State*, 677 S.W.2d 781, 783 (Tex. App. – San Antonio 1984), *aff'd*, 709 S.W.2d 662 (Tex. Crim. App. 1986).

In the present situation, Smallwood is, besides his co-defendant, the only one who could identify Appellant as being a party to this crime. Further, the officers had seen Appellant in the immediate area. Notably, Deputy Rodriquez saw Appellant leaving quickly as he arrived to begin the investigation of the robbery. In retrospect, immediately after Smallwood identified Appellant in the car at the washateria, the officers realized that, consistent with what Smallwood had told them, Appellant had been in the area to pick up Smallwood after the robbery, and that he was still driving the same vehicle Smallwood identified. In this situation, Smallwood was sufficiently credible for police to rely on the information he provided about Appellant. *See Coffey v. State*, 744 S.W.2d 235, 241 (Tex. App. – Houston [1st Dist.] 1987), *aff'd*, 796 S.W.2d 175 (Tex. Crim. App. 1990).

Appellant contends that, since the robbery had occurred several hours before his arrest, the police had time to get a warrant for his arrest, based on Smallwood's statements to the police. However, at that time, as Appellant previously argued, Smallwood's credibility was not sufficiently substantiated. It was after Smallwood pointed out Appellant, near the location of the

robbery, and the police immediately recognized the car as the one that had been speeding from the area just after the robbery, that indices of Smallwood's credibility were substantiated. At that point, investigators were not required to then suspend their investigation of a man implicated in a violent robbery.

Under the facts of this case, the trial court correctly determined that when Appellant was found sitting in his car in front of the washateria, near the scene of the robbery, he was found in a suspicious place and under circumstances reasonably showing him to be guilty of a felony. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1). Further, in light of Appellant's previous quick departure when he had seen the police patrolling the area as they searched for Smallwood, and because he was in the driver's seat of an automobile, the police were within the law to deem Appellant as "about to escape," thereby eliminating the requirement that the police get a warrant for Appellant prior to arresting him. *See* TEX. CODE CRIM. PROC. ANN. art. 14.04. Thus, it was shown by satisfactory proof, by a credible person, that a felony had been committed and the offender was about to escape. *See id*.

Accordingly, the officers had probable cause to arrest Appellant without a warrant according to Article 14.04 and Article 14.03(a)(1). *See **Hughes***, 24 S.W.3d at 838. The ensuing search of Appellant's vehicle was a proper inventory conducted pursuant to a lawful impoundment and the items found in the vehicle were admissible. *See **Garza v. State***, 137 S.W.3d 878, 882 (Tex. App. – Houston [1st Dist.] 2004, pet. ref'd). The trial court's ruling is not outside the zone of reasonable disagreement. *See **Dixon**,* 206 S.W.3d at 590. The warrantless arrest of Appellant was consistent with both federal constitutional and state statutory law. We overrule Appellant's third issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, Appellant contends that his trial counsel provided him ineffective assistance during the pretrial, trial, and posttrial phases of the case against him. Specifically, Appellant asserts that counsel failed to have "a firm grasp of the essential facts and law which caused him to be ineffective, as a matter of law." Appellant argues that, but for trial counsel's errors, the motion to suppress would have been granted and the items found in the vehicle would not have been entered into evidence. Then there would have been no evidence to corroborate

Smallwood's testimony and Appellant would not have been found guilty.

**Standard of Review**

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). To prevail on his claim of ineffective assistance, an appellant must show that his attorney's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Appellant bears the burden of proving his ineffective assistance claim by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

Our review of counsel's representation is highly deferential. When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An appellant faces the onerous burden of overcoming a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Tong*, 25 S.W.3d at 712. This court will not second guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. When there has been no posttrial proceeding at which trial counsel has been afforded the opportunity to present evidence of the strategic bases, if any, for his trial decisions, it is extremely difficult for an accused to make a showing of deficient performance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Ordinarily, this kind of record is best developed in a hearing on an application for writ of habeas corpus or a motion for new trial. *See Jackson*, 973 S.W.2d at 957. Absent such evidence, appellate courts are not at liberty to find trial counsel's conduct was ineffective unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

13

**Discussion**

Appellant's counsel on appeal filed a motion for new trial on the sole ground that "the verdict was not in the interest of justice." Appellant filed his notice of appeal just thirty days later. There is no indication in the record before us that a hearing was held on the motion for new trial.

Appellant first complains that, at the suppression hearing, Appellant's trial counsel had no case law to offer the judge when asked. At the suppression hearing, the court and counsel discussed the warrant requirements for an arrest, indicating counsel had a sufficient grasp of the law and the facts. Counsel was not ineffective because he had no cases printed out and ready to hand to the court. Appellant also complains that counsel did not present sufficient law to support motions presented at trial. Appellant's complaint regarding motions presented at trial is so vague and conclusory that it presents no complaint at all. *See* TEX. R. APP. P. 38.1(i); *Stahle v. State*, 970 S.W.2d 682, 692 (Tex. App.–Dallas 1998, pet. ref'd).

Appellant complains that trial counsel failed to hire an expert to analyze the handwriting on the letters admitted into evidence at trial. The State's expert testified the letters were all written by the same person. Appellant contends a defense expert would have testified that he did not write the note urging Smallwood to change his story. The general rule is that the failure to call additional witnesses does not constitute ineffective assistance of counsel without a showing that the witnesses were available to testify and that their testimony would have benefitted the defendant. *See Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). Likewise, the failure to request the appointment of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant. *Cate v. State*, 124 S.W.3d 922, 928 (Tex. App.–Amarillo 2004, pet. ref'd). Nothing in this record shows that an expert witness had been contacted and was willing to testify or what his testimony would have been with respect to an analysis of the handwriting in the note. *Id*. Therefore, based on the record before us, we cannot say that counsel's performance was deficient for failing to present testimony of a handwriting analyst. *See Thompson*, 9 S.W.3d at 813.

Appellant also contends that counsel's request for more funds for his attorney fees, beyond that normally paid lawyers to represent indigent clients, so, as the lawyer suggested, he would not be "working for free," should be read as an indication of ineffective assistance. Or, to use Appellant's own words, it was "not a far stretch of the imagination to conclude that Appellant's

14

case has suffered prejudice because counsel did not get the needed funds to perform the vital task to provide effective assistance of counsel." The burden is on Appellant to establish his claim of ineffective assistance of counsel. The record is silent as to how a lack of additional funds may have affected Appellant's case. *See id*. at 814.

Appellant further complains counsel failed him posttrial because "counsel did not tell him the meaning of the judgment or anything about the appeal." Though Appellant asserts that "counsel had his engine reved [sic] up; but (he) was going nowhere because he failed to engage the gear and let his foot off the clutch," this is not legal argument, or specific explanation of the actions Appellant complains of. *See Stahle*, 970 S.W.2d at 692. Moreover, the record contains a document signed by Appellant, the judge, and trial counsel entitled "Certification of Defendant's Right of Appeal" specifically stating that Appellant was informed of his rights concerning any appeal. Furthermore, on the same day the judgment was signed, the trial court appointed new counsel to handle Appellant's appeal. The order permitting trial counsel to withdraw was signed a day later. Once appellate counsel was appointed and trial counsel permitted to withdraw, trial counsel no longer had any duty to discuss appellate options. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2) (Vernon Supp. 2009).

Next, Appellant contends that trial counsel erred in having the State's handwriting expert read to the jury the portion of the letter Appellant wrote to Smallwood's family indicating that Appellant has a criminal record. Appellant contends this could not be trial strategy, and complains that trial counsel "should be made to explain [whether the reading of this section is] said strategy." We note that the entire exhibit had previously been introduced into evidence without objection. However, since Appellant did not request a hearing on his motion for new trial alleging this error, he has not established a record explaining trial counsel's strategy regarding why he failed to object or why he asked the witness to read that portion aloud. When the record is silent, there is insufficient evidence to overcome the presumption that counsel's actions were part of a strategic plan and therefore within the wide range of reasonable professional assistance. *See Tong*, 25 S.W.3d at 714.

We do not decide appeals on the basis of speculation about matters not shown in the record. *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995). The record before us does not demonstrate the alleged ineffectiveness. We cannot say that trial counsel's conduct was so

15

outrageous that no competent attorney would have engaged in it.  *See Goodspeed*, 187 S.W.3d at 392.  Appellant failed to meet his burden to show that trial counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for these alleged errors, there would have been a different verdict.  *See Tong*, 25 S.W.3d at 712.  We overrule Appellant's fourth issue.

**S<small>EIZURE OF</small> I<small>NMATE</small> M<small>AIL</small>**

In his fifth issue, Appellant contends that, because he had a "justifiable expectation of privacy" in his inmate mail, the Fourth Amendment to the United States Constitution required the State to obtain a warrant before seizing his mail.  Appellant also asserts there should have been a hearing outside the presence of the jury addressing the veracity of the evidence.  He argues the letters should not have been admitted because their prejudicial effect outweighed their probative value.

Appellant does not specify which exhibits he is complaining about.  The State offered six letters into evidence.  Appellant's counsel stated on the record, as to each one, that he had "no objection" to their admission.  When a defendant affirmatively states that he has no objection to the admission of the evidence during trial, he waives his right to complain on appeal that the evidence was illegally obtained.  *See Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008).  Neither has Appellant preserved his complaint that the letters were inadmissible because their prejudicial effect outweighed their probative value as there was no trial court objection on that basis.  *See* T<small>EX</small>. R. A<small>PP</small>. P. 33.1.

Moreover, an inmate does not have an expectation of privacy.  *Hudson v. Palmer*, 468 U.S. 517, 527-28, 104 S. Ct. 3194, 3201, 82 L. Ed. 2d 393 (1984).  Seizure of inmate mail is not a violation of an inmate's constitutional right to be free from unreasonable search and seizure.  *Stroud v. United States*, 251 U.S. 15, 22, 40 S. Ct. 50, 53, 64 L. Ed. 103 (1919).  Additionally, there is no violation of an inmate's constitutional rights by prison officials reading the inmate's nonlegal mail.  *See Thomas v. Allsip*, 836 S.W.2d 825, 828 (Tex. App - Tyler 1992, no pet.).  Since Appellant has no expectation of privacy, the corrections officers were within their authority to obtain copies of his mail without a search warrant.  Therefore, Appellant's fifth issue is overruled.

## HEARSAY EVIDENCE

In his sixth issue, Appellant alleges the trial court erred in allowing hearsay testimony by Smallwood's family members who testified that he told them Appellant tried to persuade him to rob a store. Appellant alleges that the testimony was offered to bolster the State's case and to establish that Appellant was a party to the offense. Appellant argues that the trial court committed "nonconstitutional error" and we must conduct a harm analysis. He further argues that admission of the testimony was harmful because it "had the egregious injurious effect upon the jury's psyche."

Smallwood's sister testified that Smallwood tried to avoid Appellant because Appellant wanted Smallwood to rob a store and Smallwood did not want to. Smallwood's cousin testified that Smallwood told him Appellant wanted him to rob a store, that Appellant asked Smallwood if he was scared of committing the robbery, and that Appellant took Smallwood to the store to show him how he would do it and where they would go. Smallwood's aunt testified that Smallwood told her Appellant was trying to get him to do things that were "wrong" and that he did not want to do, so Smallwood avoided Appellant. Smallwood testified, explaining that, about a week after the gym closed, Appellant started talking to him about robbing a store named Homer's in Huntington. Smallwood said he was stunned and scared and tried to hide from Appellant and avoid his calls. Smallwood testified that he told his sister and cousin what Appellant wanted him to do.

A statement is not hearsay if it is offered against a party and is a statement made by a co-conspirator during the course and in furtherance of the conspiracy. TEX. R. EVID. 801(e)(2)(E); *King v. State*, 189 S.W.3d 347, 359 (Tex. App. – Fort Worth 2006, no pet.). A statement furthers a conspiracy if it advances the cause of the conspiracy or serves to facilitate it. *Guidry v. State*, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999). Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators, (2) with intent to induce another to join the conspiracy, (3) in formulating future strategies of concealment to benefit the conspiracy, (4) with intent to induce continued involvement in the conspiracy, or (5) for the purpose of identifying the role of one conspirator to another. *Lee v. State*, 21 S.W.3d 532, 538 (Tex. App.–Tyler 2000, pet. ref'd).

17

Here, Appellant's statements to Smallwood were made in furtherance of the conspiracy because Appellant was attempting to induce Smallwood to enter into a conspiracy to rob the store. *See id.* Therefore, the challenged statements fall within the co-conspirator statements exception to the hearsay rule and were admissible. *See* TEX. R. EVID. 801(e)(2)(E). Furthermore, even if the trial court erred by admitting the statements, the error is harmless because the same facts were admitted into evidence without objection when Smallwood testified. *See **Estrada v. State***, No. AP-75,634, 2010 Tex. Crim. App. LEXIS 722, at *71 n.29 (Tex. Crim. App. June 16, 2010). Appellant's sixth issue is overruled.

## TRIAL COURT BIAS

In his final issue, Appellant contends the trial court was biased in its rulings denying his motion to suppress and motion for directed verdict.[3] Appellant contends that the trial court "carried the State's unmet burden of proof" and "erred to relieve the State of its burden." Appellant also contends that the trial court "relieve [sic] the State of its burden when it [the court], not the State cited a 'suspicious place' as an exception to the warrant requirement." He further asserts that bias is demonstrated because the State did not present any case law, yet the court ruled in its favor.

Due process requires that a neutral and detached judicial officer preside over the proceedings. *See **Brumit v. State***, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Absent a clear showing to the contrary, we presume that the trial court was neutral and impartial. ***Id***. In addressing issue three, we explained that the trial court properly denied Appellant's motion to suppress. In addressing issues one and two, we explained that there is both legally and factually sufficient evidence to support the trial court's judgment and therefore the motion for directed verdict was properly denied. The record does not support Appellant's bare assertions that denials of his motions indicate bias on the part of the presiding judge. We overrule Appellant's seventh issue.

---

[3] We note that the hearing on the motion to suppress and the trial on the merits were presided over by two different judges. Appellant also asserts without supporting argument that the trial court lacked jurisdiction to rule on the suppression motion. This assertion has no merit. *See* TEX. CONST. art. V, § 8.

**DISPOSITION**

Having overruled Appellant's seven issues, we *affirm* the trial court's judgment.


    **SAM GRIFFITH**    
Justice


Opinion delivered July 14, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)