**Affirmed and Memorandum Opinion filed May 14, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00278-CR

### CHADRICK CANARD JOHNSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1243451**

## MEMORANDUM OPINION

In this appeal from a conviction for murder, the only question is whether appellant was denied the effective assistance of trial counsel. Appellant contends that counsel's performance was constitutionally deficient because counsel never obtained expert testimony on the reliability of eyewitness identifications. Because the record is silent regarding counsel's omissions and motivations, we must apply the traditional presumption that counsel performed reasonably. Therefore, we overrule appellant's sole issue and affirm the judgment of the trial court.

# BACKGROUND

The complainant in this case was gunned down late at night in the courtyard of an apartment complex. Two eyewitnesses identified appellant as the shooter, and they both testified at his trial.

Lakenya Wiser was one of the eyewitnesses. She testified that, on the day before the shooting, she overheard appellant saying that he was going to kill the complainant. The animosity appeared to be rooted in feelings over a woman. Lakenya explained that appellant had a good friend, Kevin Hardy, who was dating the mother of the complainant's children. The complainant had been having arguments with this other woman, and Kevin and appellant wanted the arguments to stop.

On the night of the shooting, Lakenya was standing outside on the balcony of a second-floor apartment. She saw appellant exit a vehicle and then chase the complainant through an alleyway, shooting at the complainant as he ran. Lakenya testified that appellant was joined by Kevin, Kevin's brother, and one other man.

On cross-examination, Lakenya admitted that she did not actually see the shooter's face. However, she claimed that she had encountered appellant many times before, and she knew that the shooter was appellant based on his side or back profile.

Arthur Larkin was the other eyewitness. He testified that he was standing by a laundromat when he saw appellant chasing the complainant through the apartment complex with a gun in hand. Arthur heard gunfire, which he followed into the apartment's courtyard. There, he saw appellant standing over the complainant, who was lying on his back. Arthur claimed that he turned around and left, out of fear of being shot himself. He heard gunfire as he fled.

Arthur gave a recorded statement to police the morning after the shooting, but he did not identify appellant as the shooter, even though he was well-familiar with appellant. A few days later, Arthur contacted police, claiming that he saw the people responsible for the shooting at a nearby restaurant. Police responded to the scene, where they found Kevin, Kevin's brother, and two other men. Appellant was not among the group, nor was the other person identified by Lakenya.

Two days after his call to police, Arthur was given a six-person photo array. Arthur circled one of the men in the array, and he wrote, "This is the person I know as [appellant] and I saw [him] running with the gun when [the complainant] was shot." The person identified by Arthur was not, in fact, appellant, but it was a person whom Arthur had witnessed at the restaurant. Appellant was not included in the array.

A week later, Arthur was given another six-person photo array. This array included pictures of appellant and the person whom Arthur originally mistook to be appellant. Arthur circled appellant's picture and identified him as the shooter. At trial, Arthur explained that the other person had an "uncanny" resemblance to appellant.

After his conviction, appellant filed a motion for new trial, alleging that his trial counsel was ineffective in six different ways. Appellant alleged that (1) counsel was made aware of a witness who could impeach Lakenya, but counsel failed to subpoena that witness; (2) counsel was made aware of exculpatory statements from two other men who were alleged to be involved in the shooting, but counsel failed to subpoena those witnesses; (3) counsel failed to obtain expert testimony on DNA evidence; (4) counsel failed to obtain expert testimony on ballistics evidence; (5) counsel failed to obtain expert testimony on medical evidence; and (6) counsel failed to file pretrial motions seeking discovery of the

State's evidence. Appellant did not specifically allege that counsel failed to obtain expert testimony on the reliability of eyewitness identifications.

Appellant's trial counsel responded to each of the allegations in an affidavit. Upon consideration of that affidavit, the trial court denied the motion for new trial. This appeal followed.

## ANALYSIS

We examine claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance will only deprive the defendant of a fair trial if it prejudices the defense. *Id.* at 691–92. To demonstrate prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.

4

Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *See McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *See Mata*, 226 S.W.3d at 430. Rather, to establish that counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Appellant argues that counsel was ineffective because he never called an expert to testify that eyewitness identifications can be unreliable. Even if we assumed that there were studies supporting appellant's reliability conclusion, the record does not affirmatively reveal counsel's reasons for the challenged omission.

Appellant never raised the omission in his motion for new trial, and thus, counsel did not explain his strategy in his affidavit. Because the record is silent on this issue, we have no way of knowing whether counsel actually reached out to an expert. Nor do we know whether an expert was even available and willing to testify. In the absence of such evidence, counsel cannot be deemed ineffective. *Cf. Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd) (refusing to hold that counsel was ineffective for failing to obtain testimony from a handwriting expert when there was no evidence that an expert was available, willing to testify, and capable of adding to the defense in a beneficial way).

Furthermore, counsel could have reasonably determined that expert testimony was unnecessary because the reliability of the identifications could be disputed in other ways. For instance, on cross-examination, counsel elicited testimony that Lakenya failed to see the shooter's face. He pointed out that Arthur misidentified appellant as the shooter in the photo array. He also pointed out that Arthur never mentioned to police in his first recorded statement that appellant was involved in the murder. All of these points exploited weaknesses in the eyewitnesses' stories, showing that their testimony may not be reliable. Counsel, who was responsible for the efficient management of appellant's case, could have concluded that it was better to cross-examine the actual eyewitnesses, than to spend valuable resources obtaining and preparing an expert witness who did not even see the shooting as it unfolded. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (holding that counsel should not be deemed ineffective if any strategic motivation can be imagined for counsel's challenged conduct).

## CONCLUSION

Because appellant has not shown that counsel's performance was constitutionally deficient, we need not reach the question of prejudice. The trial court's judgment is affirmed.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).