**AFFIRM; and Opinion Filed April 20, 2016.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01591-CR**

**CHARLES LEE GALLAMORE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Collin County, Texas**
**Trial Court Cause No. 001-85499-2013**

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Fillmore

A jury found Charles Lee Gallamore guilty of misdemeanor family violence assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) & (b) (West Supp. 2015). The trial court assessed punishment of confinement for one year and a $500 fine, suspended imposition of the sentence, and placed Gallamore on community supervision for a period of fifteen months. In two points of error, Gallamore asserts (1) the trial court's evidentiary rulings prohibited him from adequately asserting a defensive theory and (2) his counsel was ineffective by waiving recording of voir dire of the jury panel, failing to invoke rule of evidence 614 prior to the testimony of trial witnesses, and failing to retain an expert or request that an expert be appointed by the trial court prior to trial. We affirm the trial court's judgment.

## Factual Background

Gallamore and Angela Ryan had been in a dating relationship for several years and were living together in a home they leased. On July 7, 2013, Gallamore and Ryan went to a neighborhood swimming pool at approximately 11:00 a.m. Gallamore and Ryan drank wine at the swimming pool before they returned home about four hours later. A recording of a 9-1-1 telephone call placed by Ryan was admitted into evidence and played for the jury. In that recording, Ryan stated Gallamore grabbed her by the neck and threw her into a mirror, he was intoxicated, and he had left their home in his Camaro.

Wylie police officers Mark Howeth and Jeff Callan were dispatched to Gallamore and Ryan's home in response to Ryan's 9-1-1 telephone call. A videotape recording from a camera in Callan's police vehicle was admitted into evidence and shown to the jury. On that recording, Ryan stated she and Gallamore had been fighting in the closet of their home and that Gallamore grabbed her by the neck with his right hand, pushed her against the wall, and threw her around the bathroom. The recording contains Ryan's statement that when Gallamore grabbed her around the throat, she could hardly breath and, in trying to fight back, her fingernails scraped "across [Gallamore's] face" and her complaint of pain in her wrist from trying to push Gallamore away.

Howeth testified Ryan was crying frantically and told him that Gallamore had assaulted her before leaving their home in his Camaro. He testified that Ryan described the alleged assault as having occurred in the master bedroom closet where Gallamore pushed her against a mirror on the wall. Howeth observed a smudge on the mirror consistent with Ryan's description. There was redness around the top of Ryan's chest and slight redness on her throat which was consistent with what she claimed had occurred.

While Howeth was speaking with Ryan, Gallamore drove by the home in his Camaro, and Howeth and Callan pursued him in their police vehicles. After Gallamore's vehicle was stopped, Gallamore refused field sobriety tests and ultimately was arrested for driving while intoxicated and transported by Callan to the police station. On the videotape recording from the camera in Callan's police vehicle, Gallamore told Callan that he "was in a fight with [his] girlfriend down the street," and Callan indicated that he saw scratches on Gallamore's face.

After Gallamore's arrest, Howeth returned to Gallamore and Ryan's home where he took statements and photographed the master bedroom closet area and Ryan's injuries. Those photographs were admitted into evidence. There were red marks in the center of Ryan's neck and on her mid-chest. Ryan claimed Gallamore lifted her off the ground. Ryan's wrist had begun to bruise and a photograph showed what appeared to be a bruise on Ryan's arm. According to Howeth, Ryan's statements about the alleged assault matched both his observations and the evidence he gathered at the home. Ryan's injuries and the smudge on a mirror were consistent with Ryan's claim that Gallamore pushed her into the mirror hanging on a wall. In her written statement, Ryan stated she had never been physically abused by Gallamore prior to this incident. Howeth did not believe Ryan's version of the events was fabricated.

In Howeth's experience, the type of injuries sustained by Ryan, such as the redness to her neck area, the other physical evidence, such as the smudge on the mirror, and Ryan's account of the altercation between her and Gallamore, suggest that Ryan was not the aggressor in this incident. Howeth acknowledged that a man is permitted to defend himself by using reasonable force against a woman who is hurting him. Howeth did not discern evidence that Gallamore was defending himself from Ryan. Rather, his investigation indicated Ryan was defending herself from Gallamore, although Howeth acknowledged that events described to him by Ryan could have a different and equally logical explanation.

Callan testified regarding his observations and interactions with Ryan after arriving at Gallamore and Ryan's home on July 7, 2013. Ryan claimed Gallamore grabbed her by the throat and pushed her against a mirror. Callan noted redness in the area of the base of Ryan's throat which was consistent with events described by Ryan. Ryan also stated she was experiencing pain in an arm and in both hands. Ryan communicated to Callan that she scratched Gallamore's face during the altercation. In Callan's opinion, the locations of the injuries Ryan sustained were consistent with the rendition of the altercation recounted by Ryan and were not consistent with Ryan being the aggressor in the altercation.

Callan testified that when Gallamore drove by his home, both Callan and Howeth pursued him in their police vehicles and Gallamore's vehicle was stopped by Callan. When Callan handcuffed Gallamore, he smelled an odor of alcoholic beverage and noticed Gallamore's eyes were watery, glassy, and red. Gallamore told Callan he had consumed three large glasses of wine since 11:00 a.m. Callan believed Gallamore was intoxicated. A cooler in the backseat of Gallamore's Camaro contained a bladder from a box of wine containing two to three ounces of wine. Gallamore was arrested for driving while intoxicated, and he was later charged with family violence assault.

Callan observed Gallamore had a "little" scratch on the side of his face. Gallamore told Callan that he and Ryan had gotten into an argument, Ryan hit him multiple times, and he left their home. Callan took photographs of Gallamore after he was taken to the police station, and those photographs were admitted into evidence. In Callan's opinion, the scratches on Gallamore's face and to one of his arms were wounds inflicted by Ryan in defending herself.

On July 8, 2013, Ryan brought to the Wylie police station a note from her physician detailing her injuries and showed Callan bruising that had developed since the previous day. Additional photographs Callan took of Ryan at the police station were admitted into evidence

showing discoloration around Ryan's throat where she claimed to have been grabbed by Gallamore and bruising on her left wrist.

Based on evidence obtained during his investigation of the altercation and Gallamore's driving-while-intoxicated charge, Callan opined that Gallamore was the aggressor. Callan acknowledged that if Gallamore had been attacked, he had the right to use reasonable force to protect and defend himself. However, Callan noted that Ryan weighed only about one hundred ten pounds and Gallamore was considerably larger than Ryan; accordingly, Callan did not believe Gallamore was in danger from Ryan during the altercation. Callan testified that, with the exception of the redness around Ryan's throat, Ryan's other injuries could have resulted from another plausible explanation. However, Callan believed Ryan was being truthful about what occurred. When questioned about whether his view would be different if he learned Ryan had made allegations against a prior boyfriend, Callan testified that would not change the evidence observed on the day of the altercation between Gallamore and Ryan.

Ryan testified that on July 7, 2013, she and Gallamore had been at a neighborhood swimming pool since 10:30 or 11:00 a.m. Gallamore, who had been drinking, became upset with Ryan talking to another man, and they returned home. Ryan and Gallmore were arguing. Gallamore came into the master bedroom closet where Ryan was changing clothes and pushed her aside. Gallmore placed his hand on the bottom of Ryan's neck above her collarbone, lifted her slightly off the ground with his hand, and pushed her against a mirror hanging on a wall. Gallamore was also "slinging" Ryan around and her arm hit the a bathroom counter or wall and the side of her body hit the sink or a doorframe. Ryan scratched Gallamore in a defensive move, although she did not know if she left marks on Gallamore. She denied hitting Gallamore in the back of his head.

According to Ryan, she placed a 9-1-1 telephone call as Gallamore was leaving their home. Ryan told the police who were dispatched in response to the 9-1-1 telephone call what had transpired between her and Gallamore. In her written statement, Ryan stated Gallamore had never hit her before this incident. The day after the incident, Ryan sought medical treatment because her right hand was swollen and bruised, and she was placed in a temporary cast by medical personnel because a wrist bone had been broken. After Gallamore was released from jail, he apologized to Ryan by means of a text message or email.

Gallamore testified that on the day of the incident, he and Ryan had arrived at a neighborhood swimming pool at approximately 11:00 a.m., and he drank wine there. He and Ryan left the swimming pool and an argument ensued. They continued to argue after arriving at their home. Gallamore tried to leave the bathroom area in which they were loudly arguing, and Ryan restrained him. The argument became more aggressive and Gallamore put his hands on Ryan's shoulders, pushed her backward into a closet, and tried to walk out. According to Gallamore, Ryan injured him as evidenced by bruising on his arms.

Gallamore stated this kind of argument between him and Ryan had occurred before, and he had moved her from blocking a door a number of times. However, Gallamore stated on this occasion, Ryan was much more aggressive and "apparently" he was more aggressive because Ryan was bruised on her chest. Ryan denied that he grabbed Ryan by the neck with his hand or lifted her from the ground by the neck, that he slung Ryan around, or that he caused the injury to Ryan's hand. He did not deny pushing Ryan into the wall with his hand or that the bruise on Ryan's chest resulted from that pushing. Gallamore claimed the bruising on Ryan's chest was the result of pressure he applied with his thumbs when he pushed Ryan back into the closet and in defending himself when trying to leave. He testified the force he used against Ryan in order to extricate himself from the situation was reasonable. According to Gallamore, Ryan hit him on

the back of the head.  Gallmore believes the scratches on his face were sustained when he was pushing Ryan into the closet.  Even though Ryan is petite, Gallamore believed that when he was pushing Ryan away from him, he was acting in self-defense, and Ryan caused him physical pain and bruising of the inside and outside of his upper arms.  Photographs of Gallamore's arms taken three days after the incident were admitted into evidence.  Gallamore also testified that after his arrest, a nurse at the jail recorded a bump on the back of his head.

## Procedural Background

Gallamore was charged with family violence assault of Ryan and driving while intoxicated.  He pleaded not guilty to the charge of family violence assault and guilty to the driving-while-intoxicated charge.  A jury found Gallamore guilty of family violence assault, and the trial court assessed punishment of confinement for one year and a fine of $500, suspended imposition of the sentence, and placed Gallamore on community supervision for a period of fifteen months.  Gallamore's motion for new trial was denied, and he filed this appeal of his family violence assault conviction.[1]

## Evidentiary Rulings

In his first point of error, Gallamore argues that with regard to admission and exclusion of evidence at trial, the trial court reversibly erred "by ruling in favor of the State's objections and the State's responses to [Gallamore's] objections and thereby prohibited [Gallamore] from adequately asserting a defensive theory."  Specifically, Gallamore argues the following trial court rulings constitute reversible error: overruling his objections to hearsay statements during Callan's testimony; overruling his objections to speculative statements during Callan's testimony; sustaining the State's objection to a question posed during Gallamore's cross-

---

[1] Gallamore does not challenge his conviction for driving while intoxicated.

examination of Ryan concerning her salary; and sustaining the State's objection to certain questions posed to Gallamore during his direct examination.

*Applicable Law*

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *see also* U.S. CONST. amends. VI (compulsory process and confrontation of witnesses) & XIV (due process). There is, however, no absolute constitutional right to present favorable evidence. *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002) (citing *United States v. Scheffer*, 523 U.S. 303, 316 (1998)). The right to present relevant evidence is subject to reasonable restrictions imposed by evidentiary rules that are not arbitrary or disproportionate to the purposes the rules are designed to serve. *Id.*; *see also Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010). The improper exclusion of evidence may constitute a constitutional violation (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a state court precludes the defendant from presenting a defense by erroneously excluding relevant evidence that is a vital portion of the case. *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005); *see also Miller v. State*, 36 S.W.3d 503, 506 (Tex. Crim. App. 2001) (defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule).

*Standards of Review*

The failure to preserve error forfeits complaints on appeal about the admissibility or exclusion of evidence even though the error may concern a defendant's constitutional right to

present a defense. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). When error has been properly preserved, we review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The abuse of discretion standard has been held to apply in cases where the appellant asserts the trial court improperly excluded evidence in violation of his right to present a complete defense. *See Miller*, 36 S.W.3d at 507; *Delapaz v. State*, 228 S.W.3d 183, 201 (Tex. App.—Dallas 2007, pet. ref'd). Under this standard of review, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. 2009).

Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a complete defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). However, when an erroneous evidentiary ruling denies a criminal defendant the constitutional right to present a complete defense, we apply a harm analysis in accordance with rule of evidence 103(a) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record), which is consistent with the harm analysis we apply under rule of appellate procedure 44.2(a). *Potier*, 68 S.W.3d at 666 ("Strictly speaking, the specific rule that applies to this error in admitting evidence is Rule of Evidence 103(a): 'Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . .' But the standard of review under that rule is the same as that under Rule of Appellate Procedure 44.2(b)"). In applying the "harmless error" test, our primary consideration is whether there is a "reasonable possibility" that the asserted error might have contributed to the conviction." *See Mosely v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g); *see also Potier*, 68 S.W.3d at 666 (exclusion of evidence is unconstitutional only if it

–9–

"significantly undermine[s] fundamental elements of the accused's defense" and exclusion of evidence is not prejudicial if defendant was not prevented from presenting the substance of his defense to the jury) (quoting *Scheffer*, 523 U.S. at 315).

*Discussion*

Gallamore's Hearsay Objection to Callan's Testimony:

Gallamore asserts the trial court reversibly erred by overruling his hearsay objection to Callan's testimony. Specifically, Gallamore's complaint concerns the following testimony:

> [Prosecutor]: When you were talking to her was her demeanor — based on your training and experience did you see any marks on her? Did you see anything that was supportive of what she was telling you had happened?
>
> [Callan]: The only thing I observed was she said her hand was hurting. I wasn't close enough to see it. Officer Howeth was standing closer to her, but she said she was having pain in her arm and on both of her hands or something, but she said —
>
> [Defense Counsel]: I object to hearsay, Your Honor.
>
> [Prosecutor]: Your Honor, I am not asking for the truth of the matter asserted, but only as it goes to the investigation.
>
> The Court: Overruled.
>
> [Callan]: She made claim that he pushed her, grabbed her by the throat and pushed her up against the mirror, and I noticed redness here (indicating). You know like when somebody gets red, it was in the area she described right around the throat, towards the base of the throat, and it was pretty consistent with what she had described.

Gallamore contends Callan's testimony regarding Ryan's description to him of her injuries was hearsay improperly offered for the truth of the matter asserted. *See* TEX. R. EVID. 801(d) ("hearsay" means a statement other than one made by declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted).

To preserve a complaint for appellate review, the record must show a specific and timely complaint was made to the trial judge and the trial judge ruled on the complaint. TEX. R. APP. P.

–10–

33.1(a); *see also Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). It is well-established that "erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (nothing any error in admission of evidence was harmless in light of "very similar" evidence admitted without objection). In other words, error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Assuming, without deciding, that the complained-of testimony of Callan was hearsay offered for the truth of the matter asserted, admission of the hearsay did not affect Gallamore's substantial rights because Gallamore specifically acknowledges Ryan herself testified at trial concerning the nature of her alleged injuries, and Gallamore does not contend he objected to Ryan's testimony. Because Ryan testified at trial concerning the nature of her alleged injuries, any error in the admission of Callan's testimony regarding the nature of Ryan's injuries was harmless. *See Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29; *Mayes*, 816 S.W.2d at 88.

Gallamore's Objection that Callan's Testimony was Speculative:

Gallamore further complains the trial court reversibly erred by overruling his objection that the following testimony of Callan was speculative with regard to the manner in which Gallamore sustained scratches to his face:

> [Prosecutor]: These type of scratch marks on [Gallamore's] face, in your training and experience are those defensive marks?
>
> [Callan]: Based on the account of how it all transpired, if he was grabbing her throat and she started scratching —

–11–

[Defense Counsel]: I will object at this time, because this is obviously speculation, because if he is having to say if she did this then they would be — again this invades the province of the jury, Your Honor.

[Prosecutor]: I believe it's not speculation, Your Honor. He is explaining his investigation and thought processes he went through based on the evidence he had and accounts of what happened. This is information he used in that determination.

The Court: Overruled.

[Prosecutor]: You can go ahead and answer.

[Callan]: Based on the accounts of where he had grabbed her by the throat, if you're going to scratch somebody's face you're going to have to come around the arms if he is like this (indicating). You can't go up and scratch like this (indicating). It has to be around the outside, and that's, in my opinion, how the marks got on the side of his face because she is going let me go, let me go.

Gallamore argues that "by repeating or reiterating statements that Ms. Ryan could have testified to, these speculative and hearsay statements effectively bolstered" the State's case-in-chief against Gallamore. As an initial matter, we note Gallamore did not raise a hearsay objection to this testimony by Callan at trial. Further, with regard to Callan's testimony "repeating or reiterating statements [Ryan] could have testified to," Ryan did, in fact, testify at trial that she scratched Gallamore's face by means of a defensive gesture. Moreover, Howeth testified prior to Callan that information derived from his investigation at the scene was consistent with Ryan's statement to him about how she sustained her injuries and with a conclusion Ryan was not the aggressor. Therefore, even assuming this testimony by Callan was erroneously admitted, it did not affect Gallamore's substantial rights and was therefore harmless because substantially the same evidence was admitted elsewhere at trial without objection. *See Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29; *Mayes*, 816 S.W.2d at 88.

The State's Relevance Objections to Cross-Examination of Ryan:

Gallamore argues the trial court denied him a meaningful opportunity to cross-examine Ryan with regard to the "couple's financial situation and motivations as a part of [Gallamore's] full defensive theory" when the following relevancy objection by the State was sustained:

[Defense Counsel]: And what was your salary?

[Prosecutor]: Your Honor, I will object to the relevance to the salary at the time.

The Court: How is this relevant?

[Defense Counsel]: Your Honor, the [prosecutor] in her opening statement talked about the fact that [Ryan] was able to handle the bills on her own financially, so because of that I believe she has opened the door for me to ask her what her financial position was at the time.

The Court: Sustained. Let's move on.

The prosecutor's opening statement referred to by defense counsel in responding to the State's objection reads as follows:

You will also see in this case that Ms. Angela Ryan, after this assault happened, decided that was enough and she left. She was able to leave that relationship and they are no longer together.
Now I know on Voir Dire there were some things the defense attorney mentioned and I believe those things will be what they try to bring up as defenses, but you will also hear that Ms. Ryan has a job, she is able to support herself, she has moved out of that house, she doesn't ask the defendant for anything now and they don't have a relationship now.[2]
I believe you will hear that she was able to support herself at the time and she also was working at that time. I don't think you will find any motive.

The trial court sustained the State's relevance objection to questioning by defense counsel about Ryan's salary at the time of the incident. In response to the trial court's inquiry as to how Ryan's salary was relevant to an issue at trial, Gallamore simply answered the State had opened the door in its opening statement by indicating the evidence would show Ryan was able to support herself and was working at the time of the incident. On appeal, Gallamore complains he was not able to cross-examine Ryan about the "couple's financial situation and motivations as

---

[2] As is more fully discussed below, voir dire was not recorded by agreement of the prosecutor and defense counsel.

–13–

part of Defense Counsel's full defensive theory." However, Gallamore did not specify at trial the argument he makes on appeal that Ryan's salary was purportedly relevant to her motive or intent. Additionally, Gallamore did not specify to the trial court how the amount of Ryan's salary would have a bearing on her motivation to lodge a family violence assault complaint against Gallamore. And Gallamore did not object at trial that he was being denied the opportunity to present his "full defensive theory." Neither does Gallamore explain on appeal how Ryan's complaint of assault against Gallamore and obtaining a protective order following the altercation were germane to or supportive of a "full defensive theory." *See* TEX. R. APP. P. 33.1(a)(1) (in general, as prerequisite to presenting a complaint for appellate review, record must show complaint was made to trial court by a timely request, objection, or motion that stated the grounds for the ruling complaining party sought from the trial court with sufficient specificity to make trial court aware of the complaint, unless specific grounds were apparent from the context).

Even if Gallamore had preserved his complaint for appellate review, it is without merit. Ryan testified in response to cross-examination by defense counsel that she had only been working three to four months at a real estate law firm and title company prior to the incident and she had not worked for a "couple of years" before that employment. She testified Gallamore supported her when she was not working and that a monthly child support payment she received was not enough to pay the rent on the house she and Gallamore leased. Ryan also testified she and Gallamore argued frequently and financial issues were a topic of their arguments. To the extent Gallamore contends he was denied the opportunity to present his "full defensive theory" by virtue of the trial court's ruling sustaining an objection to Ryan's testimony about the amount of her salary at the time of the incident, the record clearly reveals that jury heard testimony regarding "the couple's financial situation."

–14–

In sum, Gallamore did not argue at trial that Ryan's salary was purportedly relevant to her motive and intent and that he was denied an opportunity to present his "full defensive theory." Accordingly, he has not preserved this issue for appeal. *See Anderson*, 301 S.W.3d at 280; *Saldano*, 70 S.W.3d at 889. However, assuming he had preserved that complaint for appeal, on this record we conclude the trial court's ruling does not fall outside the "zone of reasonable disagreement," *see De La Paz*, 279 S.W.3d at 343, and the trial court did not abuse its discretion in sustaining the State's objection to defense counsel's question as to Ryan's salary at the time of the incident.

<u>The State's Relevance Objections to Gallamore's Testimony</u>:

Gallamore complains the trial court reversibly erred by sustaining the State's objections to certain questions posed to him on direct examination. In support of this complaint, Gallamore cites the following questions, objections, and rulings:

[Defense Counsel]: [After release from jail] [w]hat [happened to] your dog?

[Prosecutor]: Your Honor, again I will object to relevance.

The Court: Sustained.

* * *

[Defense Counsel]: Did Ms. Ryan continue to punish you for what she considered to be a violation on your part?

[Prosecutor]: Your Honor, I will object. This is hearsay and it is not relevant.

The Court: Sustained.

* * *

[Defense Counsel]: And when you listened to those 9-1-1 tapes and the in-car video tape, which show [Ryan] being able to kind of turn on and off her drama, would you tell the jury if that's a common thing for Ms. Ryan?

[Prosecutor]: Your Honor, I will again object. It's not relevant.

[Defense Counsel]: That's completely relevant if she can turn on and off acting. I think that's something the jury needs to know about.

The Court: I will sustain the objection.

* * *

[Defense Counsel]: Who supported the family throughout the course of your relationship with Ms. Ryan?

[Prosecutor]: Your Honor, I will object to relevance.

The Court: Sustained.

* * *

[Defense Counsel]: And if you had to do it over again as far as the situation with Ms. Ryan, do you think you could have done anything differently than what happened that day in order to protect yourself?

[Prosecutor]: I will object. This is not relevant. If he could have done anything differently is not relevant.

The Court: Sustained.

[Defense Counsel]: What would you have done differently looking back on that now?

[Prosecutor]: Your Honor, again I object. It's the same question.

The Court: Sustained.

[Defense Counsel]: Mr. Gallamore, if you had not put your hands on Ms. Ryan and pushed her out of the way to remove yourself from the situation would you ever have filed charges against her for having obviously caused you pain?

[Gallamore]: No.

[Prosecutor]: Again I will object. This isn't relevant.

The Court: Sustained.

On appeal, Gallamore asserts that by virtue of these evidentiary rulings he was denied his constitutional right "to present a meaningful defense." He asserts he attempted to present his "full defensive theory regarding the complaining witness's motivations, her credibility, her

truthfulness, the relationship background, [Gallamore]'s mental state and [Gallamore]'s actions of self-defense." Gallamore argues these matters concern his "ability to present an alternate theory" for the jury's consideration and to create reasonable doubt regarding the family violence assault charge.

Gallamore failed to preserve a complaint that the trial court's rulings regarding the relevancy of the above-referenced questions denied him his constitutional right "to present a meaningful defense." With regard to each of the questions to which the State's objections were sustained, Gallamore did not apprise the trial court of how the matter inquired about was relevant to a defensive theory and Gallamore did not assert that he was denied an opportunity to present a defensive theory. *See Anderson*, 301 S.W.3d at 280; *Saldano*, 70 S.W.3d at 889. Moreover, Gallamore failed to preserve error regarding the excluded evidence when he did not make an offer of proof setting forth the substance of the desired evidence. *See* TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).

Even if Gallamore had preserved his complaint for appellate review, we conclude the trial court's rulings were not so clearly wrong as to lie outside "the zone of reasonable disagreement," *see De La Paz*, 279 S.W.3d at 343, and the trial court did not abuse its discretion by sustaining these relevancy objections. "Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. With regard to these questions concerning what happened to Gallamore's dog after his release from jail, whether Ryan "continue[d] to punish" Gallamore after the altercation, whether Ryan behaved melodramatically, the source of financial support during Ryan's relationship with Gallamore, and whether in retrospect Gallamore believes he should have acted differently during the altercation or pressed assault charges against

–17–

Ryan, Gallamore has failed to establish how these matters have any tendency to make the existence of any fact that is of consequence to the determination of whether Gallamore assaulted Ryan on July 7, 2013, more probable or less probable than it would be without such evidence.

*Conclusion*

With regard to Callan's testimony admitted over Gallamore's objections, substantially the same testimony was admitted without objection by other witnesses and any error in the admission of Callan's testimony is therefore harmless. With regard to the trial court's rulings sustaining the State's objections to Ryan's and Gallamore's testimony, Gallamore did not apprise the trial court that the rulings prevented him from presenting the substance of his defense. Further, with regard to the State's objections to Gallamore's testimony, he did not make an offer of proof setting forth the substance of the testimony intended to be elicited. Accordingly, Gallamore's complaints about the trial court's rulings sustaining the State's objections to Ryan's and Gallamore's testimony have not been preserved for appellate review. Even assuming Gallamore had preserved these complaints for appellate review, we conclude the trial court's rulings did not constitute an abuse of discretion. We resolve Gallamore's first point of error against him.

**Ineffective Assistance of Counsel**

In his second point of error, Gallamore contends his trial counsel rendered ineffective assistance by waiving recording of voir dire of the jury panel, failing to invoke rule of evidence 614 prior to the testimony of trial witnesses, and failing to retain an expert or request an expert be appointed by the trial court prior to trial.

*Standard of Review*

Gallamore has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To prevail on a

–18–

claim of ineffective assistance of counsel, Gallamore must show that his trial counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability the results of the proceeding would have been different in the absence of counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffective assistance claim. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

An ineffective assistance claim must be "firmly founded in the record," and the record must affirmatively demonstrate the claim has merit. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Direct appeal is usually an inadequate vehicle for raising an ineffective assistance claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93. Counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id*. at 593.

When the record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a particular way. *See Hines v. State*, 144 S.W.3d 90, 93 (Tex. App.—Fort Worth 2004, no pet.) (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). If there is no evidentiary hearing on the issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel was ineffective. *Blevins v. State*, 18 S.W.3d 266, 271–72 (Tex. App.—Austin 2000, no pet.) (quoting *Thompson*, 9 S.W.3d at 813). We evaluate trial counsel's effectiveness from his perspective at trial, not in hindsight, and we consider the

representation in its totality, rather than focusing solely on isolated acts or omissions. *Mayhue v. State*, 969 S.W.2d 503, 510 (Tex. App.—Austin 1998, no pet.).

*Discussion*

Failing to Request a Reporter's Recordation of Voir Dire:

On appeal, Gallamore asserts his counsel was ineffective by failing to request a reporter's record of voir dire of the jury panel. According to Gallamore's argument, "evidence in the record," apparently consisting of his motion for new trial, contains "allegations" of bias and reveals that the trial court prevented his trial counsel from inquiring of venire panel members "about [Gallamore]'s future ability to work in a chosen field."

The record contains no transcript of a hearing on Gallamore's motion for new trial, and Gallamore does not contend there was such a hearing. Contrary to Gallamore's contention on appeal, statements contained in his unsworn and unverified motion for new trial do not constitute "evidence in the record." Motions for new trial are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing. *See Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984) (generally, in criminal cases, statements contained in post-trial motions, such as motions for new trial, are not self-proving); *see also McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (orig. op.) (affidavit must be sufficient to establish every facet of cognizable ground for new trial; "a hearing is required" in order to introduce the affidavit into evidence); *Jackson v. State*, 139 S.W.3d 7, 20 (Tex. App.—Fort Worth 2004, pet. ref'd).[3]

Texas Rule of Appellate Procedure 13.1(a) requires the official court reporter, "unless excused by agreement of the parties, [to] attend court sessions and make a full record of the

---

[3] *See also Meadows v. State*, Nos. 05-11-00230-CR, 05-11-00231-CR, & 05-11-00232-CR, 2012 WL 5417423, at *2 (Tex. App.—Dallas Nov. 7, 2012, no pet.) (mem. op., not designated for publication).

proceedings." Tᴇx. R. Aᴘᴘ. P. 13.1(a); *see also* Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ Aɴɴ. § 52.046(a)(1), (2) (West 2013) (on request, a court reporter shall attend all court sessions and transcribe the testimony).[4] Here, the record reflects the agreement of the State and Gallamore's counsel that the court reporter would not record voir dire of the jury panel.

"Mere failure of counsel to request recordation of the voir dire examination is not ineffective assistance of counsel *per se*." *Brennan v. State*, 334 S.W.3d 64, 77 (Tex. App.— Dallas 2009, no pet.); *see Young v. State*, 425 S.W.3d 469, 473 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). As a result, a deficient performance in failing to request recordation of voir dire must be established on the record. *See Young*, 425 S.W.3d at 473. "Without a showing of harm, we cannot conclude that the mere failure to request a voir dire recordation was ineffective assistance." *Brennan*, 334 S.W.3d at 77; *see also In re M.S.*, 115 S.W.3d 534, 545–46 (Tex. 2003) (counsel's failure to ensure recording of voir dire, charge conference, and closing arguments does not constitute ineffective assistance of counsel without showing of harm); *Gonzales v. State*, 732 S.W.2d 67, 68 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (specific harm from counsel's failure to request recordation of voir dire must be shown; "appellate court cannot speculate as to what may or may not have transpired at trial").[5] The record here fails to establish specific harm to Gallamore from his counsel's failure to request that voir dire of the jury panel be recorded. Gallamore's mere contentions of harm asserted in his unsworn and unverified motion for new trial do not constitute evidence that, but for his counsel's failure to

---

[4] *See also Ibarra v. State*, No. 05-09-01063-CR, 2011 WL 5042081, at *5 (Tex. App.—Dallas Oct. 25, 2011, no pet.) (not designated for publication) (court reporter must generally make a full record of all proceedings; to preserve error related to court reporter's failure to do so, defendant must object).

[5] *See also Green v. State*, No. 05-15-00453-CR, 2016 WL 335677, at *1 (Tex. App.—Dallas Jan. 27, 2016, no pet. h.) (mem. op., not designated for publication) (failure to request a court reporter is not ineffective assistance of counsel *per se*, and the record is silent as to the reason for counsel's performance; appellant failed to overcome presumption that counsel rendered effective assistance).

request a reporter's record of voir dire, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687.

Failure to Invoke Rule of Evidence 614:

On appeal, Gallamore contends his counsel was ineffective by failing to invoke rule of evidence 614 (The Rule) prior to testimony of witnesses at trial. According to Gallamore, failing to invoke The Rule "falls below the objective standard of reasonableness because it opens the door for testimony to become tainted" and the "integrity of the trial and witness testimony may have been compromised." The Rule provides for exclusion of witnesses from the courtroom while other witnesses testify. *See* TEX. R. EVID. 614; *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005).[6] A party may invoke The Rule by request, or the trial court may invoke The Rule on its own motion. TEX. R. EVID. 614.

Gallamore contends that because The Rule was not invoked, "witness testimony may have been compromised." It was incumbent upon Gallamore to demonstrate from the record that the results of his proceeding would have been different had his counsel invoked The Rule. *See Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989) (admission into evidence of testimony of adverse witness in violation of rule of evidence 614 is not in itself reversible error; it becomes so where objected-to testimony is admitted and complaining party is harmed thereby). This he has failed to do; Gallamore has not established that his counsel's failure to invoke The

---

[6] Rule of evidence 614 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the Court may do so on its own. But this rule does not authorize excluding:
>> (a) a party who is a natural person and, in civil cases, that person's spouse;
>> (b) after being designated as the party's representative by its attorney:
>>> (1) in a civil case, an officer or employee of a party that is not a natural person; or
>>> (2) in a criminal case, a defendant that is not a natural person;
>> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>> (d) the victim in a criminal case, unless the court determines that the victim's testimony would be materially affected by hearing other testimony at the trial.

TEX. R. EVID. 614.

Rule resulted in prejudice. *See id.*; *see also Andrews*, 159 S.W.3d at 101 (failure to make required showing of sufficient prejudice defeats ineffective assistance claim).[7] Gallamore's failure to make the required showing of sufficient prejudice defeats an ineffective assistance claim. *See Andrews*, 159 S.W.3d at 101.[8]

Failure to Retain or Request Trial Court to Appoint Expert:

In his motion for new trial, Gallamore asserted his trial counsel was ineffective by failing to "retain or use an expert" to refute Ryan's claim that Gallamore placed his hand on the bottom of her neck and lifted her off the ground. On appeal, Gallamore asserts his counsel was ineffective by failing to retain or request an expert be appointed prior to trial for the purpose of rebutting the testimony of Ryan, Howeth, and Callan regarding the manner in which the alleged altercation between Gallamore and Ryan occurred. According to Gallamore, if his counsel had retained or requested an expert be appointed on Gallamore's behalf, Gallamore "likely would have been able to refute many of the claims" or "would have presented the jury with an alternate theory about how the altercation may have occurred."

In order for Gallamore's arguments to have merit, there must be some showing in the record that an expert would have testified in a manner that would have benefitted Gallamore. *See Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)

---

[7] *See also Ray v. State*, No. 04-14-00347-CR, 2015 WL 4366108, at *5 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op., not designated for publication) ("Because allegations of ineffective assistance of counsel must be firmly rooted in the record, we cannot say whether trial counsel's failure to invoke 'The Rule' was deficient.")

[8] *See Wilson v. State*, No. 05-01-01152-CR, 2002 WL 1565455, at *6 (Tex. App.—Dallas July 17, 2002, no pet.) (not designated for publication) (appellant failed to demonstrate from the record that results of his proceeding would have been different had counsel invoked The Rule or objected to trial court's failure to sua sponte invoke The Rule; therefore, appellant did not demonstrate his counsel was ineffective in that regard); *Howard v. State*, No. 05-93-01950, 1994 WL 696264, at *2 (Tex. App.—Dallas Dec. 12, 1994, pet. ref'd) (not designated for publication) (appellant did not show his counsel's failure to invoke The Rule prejudiced him; appellate court does not sustain ineffective assistance of counsel claim without showing of prejudice).

(citing *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd)).[9]  Because there is no showing in the record that an expert would have testified in a manner that would have benefitted him, Gallamore's contention is speculative and this ineffective assistance of counsel claim is not sustainable.  *See Andrews*, 159 S.W.3d at 101.

*Conclusion*

On this record, Gallamore has failed to establish he was prejudiced by his counsel's alleged errors in failing to request a reporter's record of voir dire of the jury panel, invoke rule of evidence 614, or retain an expert or request the trial court to appoint an expert for him at trial. We conclude Gallamore has not met his burden of proving by a preponderance of the evidence that his trial counsel was ineffective.  *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813.  We resolve Gallamore's second point of error against him.

**Conclusion**

The trial court's judgment is affirmed.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141591F.U05

---

[9] *See also Ex parte Huerta*, No. WR-65324-01, 2007 WL 4139233, at *3 (Tex. Crim. App. Nov. 21, 2007) (orig. proceeding) (not designated for publication) (writ of habeas corpus applicant failed to establish by preponderance of evidence that trial attorney provided constitutionally defective assistance of counsel by failing to hire expert on eyewitness identification); *Ray v. State*, No. 05-03-01726-CR, 2004 WL 2580330, at *3 (Tex. App.—Dallas Nov. 15, 2004, no pet.) (not designated for publication) (failure to request appointment of expert witness is not ineffective assistance in absence of showing expert would have testified in a manner that benefitted the defendant).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHARLES LEE GALLAMORE, Appellant

No. 05-14-01591-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1, Collin County, Texas,
Trial Court Cause No. 001-85499-2013.
Opinion delivered by Justice Fillmore,
Justices Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of April, 2016.