**Opinion issued July 25, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-23-00463-CR

_____

**MIGUEL ADAN CAYETANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1235418**

---

### MEMORANDUM OPINION

A jury convicted appellant Miguel Adan Cayetano of aggravated sexual assault of a child less than fourteen years of age, and the trial court sentenced him to sixty years' confinement. *See* TEX. PENAL CODE § 22.021(a)(2)(B). In seven issues, Cayetano contends that the State violated his due process rights by presenting false

or misleading testimony and statements; the trial court erred in admitting certain testimony and evidence and denying his motion for new trial; and he received ineffective assistance of counsel at trial. He further argues that the cumulative effect of these alleged errors amounts to reversible error. We affirm.

## Background

Because Cayetano does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary to the disposition of this appeal. During the relevant time period, J.T. lived with her mother (Mother), siblings, maternal aunt, and her aunt's boyfriend (Cayetano) in Katy, Texas. J.T. contends that while her aunt was in Mexico and Mother was at work, Cayetano sexually assaulted her four or five times when she was twelve years old.[1]

Following trial, the jury convicted Cayetano of aggravated sexual assault of J.T. The trial court assessed punishment at sixty years' confinement and entered its judgment on February 23, 2023.

Cayetano filed a motion for new trial on March 24, 2023, arguing that new evidence demonstrated that he was in Mexico, not Texas, at the time of the alleged assault. He further contended that the State misled the jury or engaged in prosecutorial misconduct by providing a date of assault that was contradicted by

---

[1] Though a warrant was issued for Cayetano's arrest in 2009, he was not apprehended until 2021.

2

other evidence in the case and showing the jury a photo of J.T. at age eight instead of age twelve. Cayetano also raised ineffective assistance of counsel in his motion, arguing that trial counsel failed to adequately investigate his case. Cayetano pointed to his lawyer's failure to (1) present a competing expert to rebut the testimony of the Sexual Assault Nurse Examiner (SANE), (2) object to the SANE's qualifications as an expert, and (3) call witnesses to testify concerning Cayetano's residency in Mexico at the time of the alleged assault. Lastly, the motion challenged the trial court's admission of testimony from the SANE and J.T.'s brother (Brother).

Cayetano filed an amended motion for new trial on April 21, 2023 arguing that more new evidence showed that Cayetano was apprehended in September 2009 while attempting to enter the United States from Mexico. Cayetano contended that this evidence bolstered his position that he could not have assaulted J.T. because he was living in Mexico at the time.

The trial court conducted a hearing on the motion for new trial on May 9, 2023. At the hearing, Cayetano only presented one witness: Lucero Hernandez, his brother's common-law wife, who lived with the family at the time in question and testified concerning the photograph of J.T. Cayetano did not present any testimony

3

or evidence concerning trial counsel's strategy. The trial court orally denied the motion for new trial at the conclusion of the hearing, and this appeal followed.[2]

## False-Evidence Claims

In his first issue, Cayetano contends that the State violated his due process rights by presenting false or misleading testimony from SANE Ashley Hovar and J.T. He also argues that certain remarks made by the State in closing arguments concerning the date of the alleged sexual assault and J.T.'s complaints at the hospital were false. Relatedly, in his fourth issue, Cayetano contends that the State had a responsibility to introduce the CPS records to correct false statements made by J.T., Mother, and Brother.[3]

---

[2] The record does not contain a written order denying the motion for new trial, but the hearing on the motion was conducted on the seventy-fifth day after the judgment. Thus, the motion was deemed denied by operation of law on that day in any event. TEX. R. APP. P. 21.8.

[3] Cayetano's fourth issue refers to *Brady* violations and describes the CPS records as "exculpatory evidence." *See Brady v. Maryland*, 373 U.S. 83 (1963). Reviewing all of his appellate briefing, we understand Cayetano to be referring to the State's obligation to correct false testimony, not, as the State contends, its duty to disclose exculpatory information under *Brady*. *See Estrada v. State*, 313 S.W.3d 274, 288 (Tex. Crim. App. 2010) (noting "State's duty to correct 'false' testimony whenever it comes to the State's attention"). Cayetano clarifies in his reply brief that "[a]fter providing the Defense exculpatory evidence from the 2009 CPS Record, the STATE is not required to admit that evidence at Trial." However, Cayetano alleges, "the STATE cannot violate the Defendant's due process rights by [knowingly] [solicit] diametrically opposed [false testimony] from (4) witnesses." (brackets appearing in original).

In response, the State argues that Cayetano failed to preserve any such error for our review because he did not object to any of the complained-of testimony at trial. At least as it concerns Hovar's testimony, Cayetano claims that because the falsity of her testimony was undiscoverable at the time of trial, he can raise the issue for the first time on appeal. *See Estrada*, 313 S.W.3d at 288 (excusing defendant's failure to object at time of admission of false testimony into evidence because defendant did not know and could not reasonably have been expected to know testimony was false at time it was made).

## A.     Standard of Review and Applicable Law

"The use of material false testimony to procure a conviction violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution." *Ukwuachu v. State*, 613 S.W.3d 149, 156 (Tex. Crim. App. 2020) (citing *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015)). In reviewing a claim alleging the use of material false testimony, we must determine whether: (1) the testimony was actually false, and (2) whether it was material. *Id.* (citing *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014)). "To establish falsity, the record must contain some credible evidence that clearly undermines the evidence adduced at trial, thereby demonstrating that the challenged testimony was, in fact, false." *Ex parte Reed*, 670 S.W.3d 689, 767 (Tex. Crim. App. 2023) (citing *Ukwuachu*, 613 S.W.3d at 156). The evidence of falsity

5

must be definitive or highly persuasive. *Id.* (citing *Ukwuachu*, 613 S.W.3d at 157); *see Estrada*, 313 S.W.3d at 286 (taking judicial notice of prison regulation regarding classification system for incarcerated capital murderers and holding that regulation was sufficient to establish falsity of contradictory expert testimony at trial).

The evidence need not demonstrate perjured testimony, only that the testimony left the jury with a false or misleading impression. *Ex parte Reed*, 670 S.W.3d at 767 (citing *Ukwuachu*, 613 S.W.3d at 156); *see Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018) ("Whether evidence is false turns on whether the jury was left with a misleading or false impression after considering the evidence in its entirety."). False testimony is material if there is a reasonable likelihood that it could have affected the jury's judgment. *Ex parte Reed*, 670 S.W.3d at 767 (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Ex parte Chavez*, 371 S.W.3d 200, 206–07 (Tex. Crim. App. 2012)).

**B.    Hovar's Testimony**

Cayetano first complains that certain testimony from Hovar concerning the Tanner Puberty Stages was false. Hovar explained to the jury that the Tanner Stages are used to describe breast and genital development in adolescents. Hovar further testified that a higher Tanner Stage correlated with a higher level of estrogen. She testified that the higher level of estrogen causes the vaginal wall and hymen to become more elastic and heal more quickly, generally within twenty-four hours.

Hovar therefore concluded that a sexual assault examination of an adolescent at a higher Tanner stage may not reveal physical signs of injury. Hovar opined that J.T. was at Tanner Stage 4 and that if she had been sexually assaulted on May 19th, it was possible that any vaginal injuries could have fully healed by the time of Hovar's examination on May 20th.

When asked whether she had read any peer-reviewed studies regarding such injuries in children, Hovar further testified:

> Specifically for this case I did review an article that has been present throughout my career that's relevant. It was written by Dr. Nancy Kellogg in 2004 and its titled Genital Anatomy of the Pregnant Adolescents. It is based on a study of 36 teenage girls within the age of 15 but ages 11 through 16. Out of the 36 of the pregnant females only two have visible injury on their female genitalia on exam.

Cayetano argues that this testimony is false or fraudulent because it "lead the jury to believe that it is a natural consequence of an adolescent sexual assault to show no injuries." Cayetano further points to additional medical articles which he contends "directly contradict" Hovar's review of sexual assault injuries in female adolescents.

Cayetano did not object to any of the aforementioned testimony at trial. On appeal, he argues that because of the specialized nature of Hovar's testimony, he could not have known it was false at the time. Even if we assume that his failure to object is not fatal to his false evidence claim, *see Estrada*, 313 S.W.3d at 288, we nevertheless conclude that the record does not support such a claim.

7

Cayetano did not introduce the medical articles he references now on appeal at any point in the proceedings below.[4] Further, Cayetano did not present any expert testimony analyzing Hovar's testimony or demonstrating that her discussion of the Tanner Stages was false or misleading. "Accordingly, because the record does not contain any evidence that persuasively undermines the evidence adduced at trial, [Cayetano] cannot satisfy the falsity prong of a false-evidence claim."[5] *See Ukwuachu*, 613 S.W.3d at 157–59 (rejecting claim that unadmitted phone records used to cross-examine witnesses at trial created false impression with jury where (1) appellant failed to identify any specific testimony that left false impression, (2) appellant did not point to credible evidence showing State's interpretation of records was incorrect, (3) records were never admitted or made part of record with motion for new trial, and (4) appellant did not present any expert testimony analyzing State's use of records to prove testimony was false or misleading).

---

[4] By separate order, we previously granted the State's motion to strike Cayetano's original brief, in part because it included an appendix containing these extra-record materials.

[5] False-evidence claims are typically raised in habeas proceedings following the discovery of new evidence. *See Tennard v. State*, No. 14-19-00557-CR, 2020 WL 6072830, at *2 (Tex. App.—Houston [14th Dist.] Oct. 15, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2008)).

8

## C.   J.T.'s Testimony

In his reply brief, Cayetano also argues that J.T. falsely testified concerning the time and place of the alleged assault. He claims that her testimony that an assault occurred in the bathroom on May 19, 2009 is contradicted by medical records from May 20, 2009 noting (1) an assault date of May 15, 2009; (2) J.T.'s report that "yesterday [May 19, 2009] he wanted to do that but somebody knocked on the door, [so] he only hugged me"; and (3) that "an attempt was made the day before [May 19, 2009] but 'she refused to take her clothes off.'"[6] Cayetano did not object to the allegedly false testimony from J.T. at trial.

Unlike his false-evidence claim concerning Hovar's medical testimony, there is nothing to suggest that Cayetano did not know or could not have known that J.T.'s testimony regarding the date of the assault was false at the time it was given. *Compare Estrada*, 313 S.W.3d at 288 (holding that defendant had not waived due-process complaint regarding false evidence by failing to timely object because he "could not reasonably be expected to have known that the testimony was false at the time that it was made"), *with Valdez v. State*, No. AP-77,042, 2018 WL 3046403, at *7–8 (Tex. Crim. App. June 8, 2018) (not designated for publication) (holding that

---

6    The medical record that Cayetano identifies as containing this third statement is handwritten and not entirely clear. Hovar (who did not author the record) read it into the record as follows: "During assault patient refused to take her clothes off. On 5/19/2009." This interpretation would not support Cayetano's position that this record only describes an *attempted* assault on May 19, 2009.

9

defendant waived due-process complaint where he was aware of inconsistent statements and failed to object). In fact, the State gave notice that it intended to use the medical records at trial.[7] The notice averred, and Cayetano does not dispute, that copies were provided to the defense at least fourteen days before trial. Thus, we determine that because Cayetano did not object to the allegedly false testimony at trial, he has failed to preserve this issue for our review. *See Saldano v. State*, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002) (declining to address merits of State's confession that complained-of evidence was erroneously admitted because defendant "did not make an objection to the testimony as our law has always required"); *see also Aquino Calderon v. State*, No. 01-22-00513-CR, 2023 WL 8262710, at *10 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op., not designated for publication) (holding that appellant waived false evidence claim by failing to object at trial where appellant knew witness had made prior statements inconsistent with trial testimony, and State timely disclosed those prior inconsistent statements).

## D.  Remarks During Closing Arguments

Cayetano further alleges that during closing arguments, the State made false or misleading statements to the jury concerning Hovar's testimony and the date of the alleged assault. Again, Cayetano did not object to these allegedly false remarks

---

[7]      These medical records were in fact admitted at trial during Hovar's testimony.

at the time they were made. Nevertheless, the Court of Criminal Appeals rejected a similar argument in *Ukwuachu*, concluding that complaints that a prosecutor's remarks during cross-examination and argument were false or misled the jury "[did] not fall within the scope of [its] false-evidence jurisprudence." 613 S.W.3d at 157. The court explained that to demonstrate the falsity requirement, there must be both an allegation of falsity of some specific testimony and proof of that falsity with highly persuasive evidence that undermines the evidence presented at trial. *Id.* The court ultimately concluded that "a prosecutor's questions of a witness and his arguments to the jury are not 'evidence' within the meaning of a false-evidence claim." *Id.* at 157–58 (citing *Coble v. State*, 871 S.W.3d 192, 206 (Tex. Crim. App. 1993); *Barrientez v. State*, 487 S.W.2d 97, 101 (Tex. Crim. App. 1972)). For the same reasons, we reject Cayetano's false-evidence claim as to the remarks made by the State during closing arguments.

We overrule Cayetano's first issue.

## E. Testimony Contradicted by CPS Records

Cayetano's fourth issue likewise concerns the State's alleged use of false evidence or testimony, so we discuss it here. Cayetano contends that the State presented false testimony from J.T, Mother, and Brother concerning the sexual assault. Specifically, Cayetano points to the following:

11

- Testimony from J.T. concerning a sexual assault by Cayetano that occurred in the bathroom of their home, despite absence of any reference to the bathroom as the location of the assault in the CPS records;

- Mother's testimony that on the date in question, she remembered calling home, speaking with Lucero, and learning that J.T. was locked in the bathroom, contrary to her 2009 statement recounting that she spoke with *Brother* on the date in question who informed her that J.T. was locked in the *bedroom*; and

- Brother's testimony that he was speaking with Mother on the phone while J.T. was locked in the bathroom and that Cayetano broke the bedroom door down and beat Brother with his fists, though the CPS records do not mention a telephone call, broken doors, or injuries to Brother.

Cayetano argues that because these areas of testimony were directly contradicted by the CPS records, the State was obligated to correct it. Again, Cayetano failed to object to any of the complained-of testimony on this basis at trial. As with the portions of J.T.'s testimony complained of in his first issue, Cayetano failed to preserve for our review any false-evidence claim as to these portions of testimony. *See Saldano*, 70 S.W.3d at 891; *see also Valdez*, 2018 WL 3046403, at *7–8; *Aquino Calderon*, 2023 WL 8262710, at *10. Cayetano had reason to know of the alleged falsity at the time J.T., Mother, and Brother testified. To the extent

12

that their testimony contradicted the CPS records from the time of the alleged assault, the State previously provided those records to Cayetano.

Even if preserved, Cayetano's false-evidence claim as to the testimony supposedly contradicted by the CPS records lacks merit. First, we disagree with Cayetano's argument that the absence in the CPS records of certain information testified to at trial necessarily means the testimony was false. "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Ex parte Chavez*, 371 S.W.3d at 208; *see also Hocko v. State*, 590 S.W.3d 680, 697 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (witness's failure to mention that appellant kicked complainant during 911 call "[did] not require a conclusion" that witness lied when she testified to such at trial; trial testimony as compared to 911 call "did not necessarily give the jury a false impression").

Additionally, the Court of Criminal Appeals has held that minor inconsistencies in a witnesses's trial testimony do not, without more, show that the witness's testimony is false. *See Ex parte De La Cruz*, 466 S.W.3d at 867–68, 871 (finding that inconsistencies in eyewitness's trial testimony compared with expert witness's opinion, with respect to number of times victim was shot and location of shooting, did not, without more, support finding that witness's testimony was false) (citing *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) (stating that fact that witness may have given earlier inconsistent statement, or that other witnesses

13

may have conflicting recollection of events, does not establish that witness's testimony was false)). Instead, contradictory witness testimony during trial "merely establishes a credibility question for the jury" to decide and "does not suffice to demonstrate" that the evidence gave the jury a false impression. *Id.* at 871 (quoting *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). The jury is the sole judge of witness credibility and the weight to be afforded to witness testimony, especially where the record contains conflicting testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (holding in case involving contradictory testimonial evidence that it was for jury to determine whether two witnesses were lying or telling truth); *see also* TEX. CODE CRIM. PROC. art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved and of the weight to be given to the testimony. . . .").

We overrule Cayetano's fourth issue.

## Expert Testimony

In his second issue, Cayetano argues that the trial court erred in admitting testimony from three of the State's experts: SANE Hovar; Claudia Mullin, a forensic examiner at the Children's Assessment Center; and Dr. Whitney Crowson, a child psychologist. As to Hovar and Mullin, Cayetano contends that the trial court failed to ensure the witnesses were properly qualified. Regarding Dr. Crowson, Cayetano argues that the trial court erred in allowing her to observe J.T.'s testimony and then

testify because this improperly bolstered J.T.'s credibility, and Crowson's testimony was neither reliable nor relevant under Texas Rule of Evidence 702.

## A. Failure to Object at Trial

The State argues that Cayetano's complaints regarding the qualifications of Hovar and Mullin are not preserved for our review because he failed to object to their testimony on this basis at trial. In response, Cayetano argues that as the gatekeeper of the evidence, the trial court was required to conduct a "gatekeeper hearing" outside the presence of the jury for each expert. Cayetano suggests the trial court had an affirmative duty to do so regardless of whether an objection was raised regarding the expert's testimony. He points to no case law supporting such an assertion.

The Texas Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano*, 70 S.W.3d at 889. "This is true even though the error may concern a constitutional right of the defendant." *Id.* It is also true when a party challenges the reliability of expert testimony pursuant to the rules of evidence. *Stephens v. State*, 276 S.W.3d 148, 153 (Tex. App.—Amarillo 2008, pet. ref'd) (holding appellant failed to preserve error when he did not object to expert's testimony at trial or request *Daubert* hearing). Because he failed to object to the qualifications of either Hovar or Mullin at trial or request a *Daubert* hearing, he has

15

failed to preserve his complaints concerning their testimony for our review. TEX. R. APP. P. 33.1(a); *see also Dolard v. State*, Nos. 01-13-00094-CR, 01-13-00095-CR, 01-13-00097-CR, 01-13-00098-CR, 2014 WL 3607514, at *5–6 (Tex. App.—Houston [1st Dist.] July 22, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's failure to object to expert's testimony at trial waived any complaint regarding testimony on appeal).

## B. Dr. Crowson's Testimony

Cayetano's arguments concerning the trial court's admission of Dr. Crowson's testimony are not entirely clear. In his principal brief, Cayetano seems to focus on the trial court's overruling of defense counsel's objection to the State's request that Crowson be permitted to observe J.T.'s testimony at trial. In his reply brief, Cayetano argues that Crowson should not have been permitted to testify following her observation of J.T. because her testimony was not reliable or relevant. We address each argument below.

### 1. Allowing Dr. Crowson to Observe J.T.'s Testimony

At trial, Cayetano invoked Texas Rule of Evidence 614, otherwise known as "the Rule." *See* TEX. R. EVID. 614 (providing that, at party's request, trial court must order witnesses excluded from hearing other witnesses' testimony). The State requested an exception to the Rule for Dr. Crowson pursuant to Rule 614(c), which exempts from "the Rule" "a person whose presence a party shows to be essential to

16

presenting the party's claim or defense." *Id.* at 614(c). The trial court granted the State's request over Cayetano's objection.

On appeal, Cayetano argues that the trial court abused its discretion by allowing Dr. Crowson "to sit in the courtroom [during J.T.'s testimony] and be observed by the Jury which would give her instant credibility." He also argues that portions of Dr. Crowson's testimony impermissibly bolstered J.T.'s credibility. We disagree.

The Court of Criminal Appeals has held that a trial court is vested with discretion and may permit expert witnesses to be exempt from "the Rule," so that they may hear other witnesses testify and then base their opinions on such testimony. *Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972); *Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993); *see also Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Considering this line of cases, we hold that the trial court's exemption of Dr. Crowson from "the Rule" does not amount to an abuse of discretion. The stated reason for Dr. Crowson's exemption provided by the State—allowing a clinical psychology expert to take J.T.'s testimony into consideration when offering her opinion—falls within the exemptions provided in Rule 614. *See* TEX. R. EVID. 614; *see also Martinez*, 867 S.W.2d at 39–40; *Lewis*, 486 S.W.2d at 106; *Caron*, 162 S.W.3d at 618; *Garcia v. State*, No. 01-17-00171-CR, 2018 WL 827452, at *6 (Tex. App.—Houston [1st Dist.] Feb. 13,

2018, pet. ref'd) (mem. op., not designated for publication); *Gonzales v. State*, Nos. 03-13-00333-CR & 03-13-00334-CR, 2015 WL 3691180, at *2 (Tex. App.—Austin June 11, 2015, no pet.) (mem. op., not designated for publication) ("We believe the purpose articulated by the State—providing expert testimony based upon observations of the children's testimony to explain exhibited behaviors not readily understood by those not familiar with the dynamics of child sexual abuse—is consistent with the exception provided for in the Rule.").

## 2. Admissibility of Dr. Crowson's Testimony

As it concerns Cayetano's arguments that Dr. Crowson's testimony should have been excluded because it was not subject to a gatekeeper hearing or not sufficiently reliable or relevant, we conclude that Cayetano failed to preserve such arguments for our review because he did not object to Crowson's testimony on that basis at trial. In fact, Cayetano stipulated to Crowson as an expert:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Would the Court – and I – would the Court – can I voir dire her just to see if – what kind of – well, I guess, we'll just object if– |
| THE COURT: | I tell you what. Let's give the State the opportunity to see if they can prove this witness up as an expert. |
| [DEFENSE COUNSEL]: | All right. |
| THE COURT: | If you have some objection to that, you can take her on a voir dire as to whether or not she's an expert. |

18

| | |
|---|---|
| [DEFENSE COUNSEL]: | Okay. No. I'm pretty sure she's going to be an expert in the field. She does – |
| . . . . | |
| THE COURT: | Do you wish to stipulate that she's an expert? |
| [DEFENSE COUNSEL]: | She's a psychiatrist, right? |
| [PROSECUTOR]: | A clinical psychologist. |
| [DEFENSE COUNSEL]: | Yes, I would. |
| THE COURT: | All right. Then by the stipulation of the defense, this will be an expert in clinical psychology. |

As with his arguments concerning Hovar and Mullin, we determine that by failing to object to Dr. Crowson's testimony on the basis of reliability or relevance or request a gatekeeper hearing, Cayetano did not preserve any such complaints for our review on appeal. *See* TEX. R. APP. P. 33.1(a); *Stephens*, 276 S.W.3d at 153; *Saldano*, 70 S.W.3d at 889; *Dolard*, 2014 WL 3607514, at *5–6.

We overrule Cayetano's second issue.

**Admission of Brother's Testimony**

In his third issue, Cayetano contends the trial court violated his due-process rights in admitting testimony from Brother concerning the alleged sexual assault. Cayetano argues that the trial court erred in admitting this testimony because Brother had no firsthand knowledge of the alleged assault. In support of his argument,

Cayetano points to records from the CPS investigation following J.T.'s outcry. Specifically, the notes from a CPS interview with Brother on May 21, 2009 indicate that Brother told the interviewer that his family slept in a hotel the night prior because "they were having problems with their uncle" but "he [did] not know what kind of problems" and "he did not know what happened."

The State points out (and Cayetano does not dispute) that Cayetano did not object to Brother's testimony on this basis at trial. Under Texas law, "if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Due to Cayetano's failure to object to Brother's testimony on the basis that he lacked firsthand knowledge of the assault, we hold that Cayetano has failed to preserve error on this point. *See* TEX. R. APP. P. 33.1 (to preserve complaint for appellate review, record must show "the complaint was made to the trial court by a timely request, objection, or motion" on which trial court ruled or refused to rule); *Davis v. State*, 313 S.W.3d 317, 352 (Tex. Crim. App. 2010) ("An appellant is obligated to point out to this Court where the record shows that he has preserved error on his claim.").

We overrule Cayetano's third issue.

**Ineffective Assistance of Counsel**

In his fifth issue, Cayetano contends he received ineffective assistance of counsel at trial. Specifically, Cayetano argues that his attorney should have: (1) called witnesses who could testify that at the time of the alleged assault, Cayetano was living in Mexico; and (2) called experts to rebut the State's experts' testimony.

## A.    Standard of Review and Applicable Law

The Sixth Amendment of the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires objectively reasonable representation, not errorless performance. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must establish both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009)

("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second prong, an appellant must demonstrate prejudice or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Lopez*, 343 S.W.3d at 142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Furthermore, a claim of ineffective assistance of counsel also requires proof of prejudice. *Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).

In most cases, the record on direct appeal is undeveloped regarding the motive behind counsel's actions and thus inadequate to prove a claim of ineffective

assistance.[8] *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012);

*James v. State*, 506 S.W.3d 560, 569 (Tex. App.—Houston [1st Dist.] 2016, no pet.);

*see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A

substantial risk of failure accompanies an appellant's claim of ineffective assistance

of counsel on direct appeal."). The Court of Criminal Appeals has repeatedly stated

that trial counsel "should ordinarily be afforded an opportunity to explain his actions

before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial

counsel is not provided an opportunity to explain his actions, we will not find that

counsel's performance was deficient unless the challenged conduct was "so

outrageous that no competent attorney would have engaged in it." *Id.* (quoting

*Goodspeed*, 187 S.W.3d at 392).

**B.     Failure to Call Alibi Witnesses**

Cayetano first claims that he received ineffective assistance of counsel at trial

because his attorney failed to call as witnesses other adults living in the home at the

time of the alleged assault, who he claims could have testified that Cayetano was no

longer living there and could not have assaulted J.T. because he had moved to

---

[8]     Claims of ineffective assistance of counsel rejected on direct appeal "due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Mexico.[9] He also contends that counsel could have called various witnesses from Mexico who could attest that Cayetano was residing in Mexico during the relevant timeframe. With his motion for new trial, Cayetano presented affidavits from the following: (1) his common-law wife, J.T.'s aunt, who stated that the couple left for Mexico on April 5, 2009 and arrived on April 7, 2009; (2) a Mexican official attesting to Cayetano's residency in Mexico from April 9, 2009 to August 2013; (3) three neighbors in Mexico who confirm the dates given by Cayetano's wife; (4) an individual who avers that Cayetano purchased a piece of equipment from him on April 15, 2009; and (5) an employer stating Cayetano worked there from April 14, 2009 to August 28, 2009.

A defendant in a criminal case is entitled to reasonably effective assistance of counsel, including investigation of the defendant's case. *Strickland*, 466 U.S. at 690–91. Trial counsel's duty to investigate includes seeking out and interviewing potential witnesses. *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). To demonstrate ineffective assistance of trial counsel based on an uncalled witness, an appellant must show that: (1) the witness would have been available to testify, and (2) the witness's testimony would have been of some benefit to the defense. *Ex parte*

---

[9] Counsel did call one such witness at trial: Lucero Hernandez. As mentioned earlier, Hernandez is the girlfriend or common-law wife of Cayetano's brother and was undisputedly living in the home at the time in question. Lucero testified that Cayetano left for Mexico with his wife and that there was not a time when Cayetano lived in the home without his wife.

*Sanchez*, 667 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd) (citing *Everage v. State*, 893 S.W.2d 219, 222–23 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd)). To establish the availability prong, proposed witnesses must testify or swear in an affidavit that they were available to testify at the defendant's trial. *Id.* (citing *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007)). An ineffectiveness claim based on the failure to call witnesses may be established through either testimony on the record or an affidavit from the uncalled witness. *Id.* (citing *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (applicant provided affidavit from uncalled witness)).

Acknowledging that his would-be witnesses were living in Mexico at the time of trial, Cayetano summarily contends that "they could have been witnesses by obtaining *Visitor Visas* through the United States Citizenship and Immigration Services." Fatal to his claims, however, not one of the affidavits includes information regarding the individual's willingness or ability to testify at trial. For this reason, Cayetano did not meet his burden to demonstrate that trial counsel's failure to call any of these individuals as witnesses rose to the level of ineffective assistance of counsel. *Ex parte Sanchez*, 667 S.W.3d at 329–30 (rejecting ineffective assistance claim on availability prong for two of three potential witnesses because those affidavits were silent as to availability to testify at trial); *see also Ex parte Ramirez*, 280 S.W.3d at 853; *Ex parte White*, 160 S.W.3d at 52.

## C.    Failure to Call Expert Witnesses

Cayetano also argues that he received ineffective assistance of counsel at trial because his attorney failed to call any expert witnesses to rebut testimony provided by the State's experts, particularly the SANE's testimony concerning the Tanner Stage and J.T.'s lack of apparent injury. The same standard discussed above applies in the context of expert witnesses. In order to prove ineffective assistance in failing to call expert witnesses, Cayetano must demonstrate that experts were available to testify and that their testimony would have benefitted his defense. *See Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd); *see also Starr v. State*, No. 01-18-00947-CR, 2020 WL 4006447, at *5–6 (Tex. App.— Houston [1st Dist.] July 16, 2020, no pet.) (mem. op., not designated for publication) (holding appellant could not demonstrate ineffective assistance in failing to present expert to refute State's case where record contained no evidence that such an expert was available to testify or would have benefited appellant's defense).

Cayetano relies on *Ex parte Overton*, 444 S.W.3d 632 (Tex. Crim. App. 2014) to support his position that trial counsel's failure to present competing experts amounts to deficient performance. The facts of *Ex parte Overton* are markedly different from the present case. In *Ex parte Overton*, the defense had retained a leading expert in the relevant field, who gave a lengthy deposition. *Id*. at 637. Thus,

26

the reviewing court had the benefit of the expert's testimony in determining that it would have been beneficial to the defense. *Id.* at 638–39. Further, the record contained information concerning trial counsel's reasons (or lack thereof) in not using the deposition testimony at trial. *Id.* at 640.

Here, unlike in *Ex parte Overton*, nothing in the record suggests that an expert witness was contacted and was willing to testify or what testimony such an expert would have provided. Likewise, the record is silent as to trial counsel's strategy in failing to retain his own experts. Therefore, based on the record before us, we cannot say that counsel's performance was deficient in failing to present expert testimony. *Washington*, 417 S.W.3d at 725; *Brown*, 334 S.W.3d at 803; *see also Rylander v. State*, 101 S.W.3d 107, 109–11 (Tex. Crim. App. 2003) (reversing court of appeal's determination of ineffective assistance for failing to present expert testimony, among other alleged deficiencies; court held that appellant failed to establish deficient performance prong of *Strickland* where record was silent as to trial counsel's strategy).

We overrule Cayetano's fifth issue.

## Denial of Motion for New Trial

We interpret Cayetano's sixth issue as challenging the trial court's denial of his motion for new trial on the basis of newly discovered evidence—the statements from Mexico. *See* TEX. CODE CRIM. PROC. art. 40.001 ("A new trial shall be granted

27

an accused where material evidence favorable to the accused has been discovered since trial."). As discussed earlier, Cayetano's motion for new trial included statements from various individuals in Mexico, all essentially stating that Cayetano was living or working in Mexico during the time period he allegedly sexually assaulted J.T. in Texas.

## A. Standard of Review and Applicable Law

We review a trial court's decision to deny a motion for new trial asserted on a new-evidence claim for abuse of discretion. *State v. Arizmendi*, 519 S.W.3d 143, 148–49 (Tex. Crim. App. 2017); *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). We view the evidence in the light most favorable to the trial court's ruling and will not reverse its decision to deny a new-trial motion unless it falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). The trial court has broad discretion to make credibility and weight determinations in deciding whether the new evidence will bring about a different result in a new trial. *Olsen v. State*, 606 S.W.3d 342, 352 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). Motions for new trial on newly discovered evidence grounds are disfavored by courts and viewed with great caution. *Margraves v. State*, 56 S.W.3d 673, 685 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

To obtain relief under article 40.001, the defendant must satisfy the following four-part test:

1. The newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

2. The defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

3. The new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

4. The new evidence is probably true and will probably bring about a different result in a new trial.

*Arizmendi*, 519 S.W.3d at 149; *Wallace*, 106 S.W.3d at 108. Unless the defendant satisfies all four requirements, he is not entitled to a new trial. *Margraves*, 56 S.W.3d at 685.

## B. Analysis

At a minimum, Cayetano has failed to meet the first and second elements.[10] If Cayetano was actually in Mexico at the time J.T. claims he assaulted her, he necessarily would have been aware of this fact at the time of trial. *See Drew v. State*,

---

[10] Cayetano focuses on the third element—the admissibility of the alleged new evidence. Because we determine that he cannot establish the first or second element, we do not reach his arguments concerning admissibility. *See Margraves v. State*, 56 S.W.3d 673, 685 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

743 S.W.2d 207, 227 (Tex. Crim. App. 1987) (concluding that if potential witness's testimony that he, not appellant, committed murder were true, "then the matter of non-participation was certainly known to the appellant at the time of trial" and noting appellant could have testified on his own behalf to this fact). Cayetano cannot demonstrate that the information from the individuals in Mexico as to his residency was unknown or unavailable to him at the time of trial. *See Hamilton v. State*, 563 S.W.3d 442, 448–49 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (holding that affidavits from appellant's family members concerning his difficult childhood and various diagnoses, among other things, did not establish that such information was unknown to him at time of trial); *Marines v. State*, 292 S.W.3d 103, 111 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding evidence, including appellant's own affidavit, that someone other than appellant was shooter was known to appellant at time of trial and thus not newly discovered).

Further, Cayetano does not argue that the failure to present the alibi witnesses at trial was not due to his lack of diligence. *See Ho v. State*, 171 S.W.3d 295, 307 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (determining that appellant was on notice of State's intention to introduce evidence of murder and that appellant did not exercise diligence in procuring testimony of alibi witness); *Zamora v. State*, 647 S.W.2d 90, 95 (Tex. App.—San Antonio 1983, no pet.) (finding lack of diligence when appellant knew about witness but chose not to inform attorney).

Additionally, even if true, Cayetano's alibi evidence does not disprove the fact that he sexually assaulted J.T. Instead, it merely suggests that Cayetano returned from Mexico and assaulted J.T., or that the assault may not have occurred on April 15, 2009 (the date alleged in the complaint). Because J.T. testified that Cayetano sexually assaulted her four or five times within a three- or four-month period in 2009, and Cayetano's charging instrument alleged he committed the offense "on or about" April 15, 2009, the State was not required to prove Cayetano's sexual assault of J.T. happened on April 15—only that it occurred prior to presentment of the charging instrument and within the limitations period. *See Schoenbauer v. State*, 85 S.W.3d 400, 405 (Tex. App.—Tyler 2002, no pet.); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Moore v. State*, 4 S.W.3d 269, 277–78 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

We overrule Cayetano's sixth issue.

### Cumulative Error

In his seventh issue, Cayetano urges this Court to consider the cumulative effect of the alleged errors presented above. While a number of errors may be deemed harmful in their cumulative effect, *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), we hold cumulative error has not been shown here. We have determined that appellant failed to show error in his six preceding points of

error. "Therefore, there is no error to cumulate." *Jenkins v. State*, 493 S.W.3d 583, 613 (Tex. Crim. App. 2016).

We overrule Cayetano's seventh issue.

## Conclusion

Having overruled each of Cayetano's issues, we affirm the judgment of the trial court.


Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).